**C.A. EDWARDS, Jr., Individually and as Guardian of Estate of Hazel M. Edwards and as Personal Representative and Heir of Hazel M. Edwards; and the Estate of Hazel M. Edwards, Deceased, Appellant,**

v.

**Maria Concepcion Shelly PENA, Appellee.**

**No. 13–98–655–CV.**

Court of Appeals of Texas, Corpus Christi.

Jan. 11, 2001.

---

Walter J. Passmore, Passmore, Walker & Twenhafel, McAllen, for Appellant.

Darlene Vale, Fela Balboa Olivarez, McAllen, for Appellee.

Before Chief Justice SEERDEN [1] and Justices HINOJOSA and YAÑEZ.

## OPINION

Opinion by Justice YAÑEZ.

Appellant, C.A. Edwards, served as guardian for his stepmother, Hazel Edwards. Shelly Pena, a former employee of Hazel Edwards, brought suit against appellant alleging various causes of action. Appellant counterclaimed, alleging Pena breached a fiduciary duty to Hazel Edwards. Following a trial to the jury, the court rendered judgment in favor of Pena.

---

1. Retired Chief Justice Robert Seerden assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

Appellant appeals this judgment. We reverse and render.

## Background

This case arises out a dispute over the handling of a certificate of deposit ("CD") by appellant during his guardianship of Hazel Edwards. Pena claimed ownership of this CD. Pena had served as a personal secretary and general assistant to Hazel Edwards following the death of Hazel's husband in 1987. Before working for Hazel, Pena had been employed as a secretary for Hazel's husband at his abstract company. Pena oversaw Hazel's finances and assisted her in daily tasks. Hazel took Pena with her on several trips, including one to Hawaii and another to visit Hazel's relatives in California. Hazel also gave Pena a number of gifts. The record indicates that Hazel paid a substantial amount of money to Pena, including money to pay off charges on Pena's credit cards. In June of 1989, Hazel added Pena's name as a payee on the CD which is the basis of this dispute.

Over the years following her husband's death, Hazel began to have health problems, which became increasingly more serious. Along with her physical ailments, Hazel began to suffer from a progressive form of dementia. In November of 1994, Hazel's stepson, C.A. Edwards, appellant, was first appointed temporary guardian of Hazel's person and estate; and eventually, on January 4, 1995, permanent guardian of Hazel's person and estate. In the course of marshalling Hazel's estate, appellant redeemed the CD and used the proceeds to purchase another CD which listed only Hazel Edwards as payee.

On January 27, 1995, Hazel Edwards died. Guardianship proceedings were closed on April 10, 1995. On April 11, 1995, Pena filed suit against appellant individually, as guardian of the estate of Hazel Edwards, and as personal representative and heir of Hazel Edwards. Pena alleged that appellant had wrongfully deprived her of the CD to which Hazel had added Pena's name. Pena alleged that the CD was her property, having been gifted to her by Hazel. Appellant answered, arguing that Pena had no ownership interest in the CD because the gift had not been completed. Appellant also counterclaimed in the name of the estate of Hazel Edwards, alleging that Pena had breached her fiduciary duty to Hazel Edwards by depleting Hazel's estate through fraud, undue influence, and duress.

The case was tried to a jury, which found that the CD had been given to Pena and that appellant had committed conversion and fraud by taking the CD from Pena. The jury also found that Pena had not breached a fiduciary duty to Hazel. With six issues on appeal, appellant challenges the trial court's jurisdiction, the jury's findings, and the damage award.

## The Jurisdiction of the District Court

■ In his first issue on appeal, appellant argues that the district court lacked jurisdiction to hear this case. Appellant contends that the county court-at-law, by exercising jurisdiction over the guardianship of Hazel Edwards, had dominant jurisdiction over this matter, exclusive of the district court. *See* TEX. PROB. CODE ANN. § 607(a) (Vernon Supp.2000).

When a ward dies, the probate court loses jurisdiction of the guardianship matter, except for the filing of the final accounting and closing of the guardianship. *See* TEX. PROB. CODE ANN. § 745(a)(2) (Vernon Supp.2000)(a guardianship of an incapacitated ward is settled and closed when the ward dies); *Carroll v. Carroll*, 893 S.W.2d 62, 68 (Tex.App.—Corpus Christi 1994, no writ). The county-court-at-law's jurisdiction over matters arising from the guardianship of Hazel Edwards terminated after Hazel's death, except for the filing of the final accounting. The district court properly exercised jurisdiction in this case. Issue number one is overruled.

## Derived Judicial Immunity

In his fifth issue, appellant claims that, because he was appointed guardian by the court, all of his actions as guardian are protected by judicial immunity. Appellant directs us to no cases in which judicial immunity has been extended to a guardian, and we find none. We will address this issue by examining the doctrine of derived judicial immunity.

Judges are absolutely immune from liability for judicial acts performed in the course of judicial proceedings over which they have jurisdiction. *Houston v. West Capital Fin. Servs.*, 961 S.W.2d 687, 689 (Tex.App.—Houston [1st. Dist.] 1998, writ dism'd w.o.j.). Judicial immunity may also attach to persons authorized or appointed by a judge to perform services for the court. *Id.* This is known as derived judicial immunity. *Id.* We apply a functional approach in determining if a particular person enjoys derived judicial immunity. *Id.; Delcourt v. Silverman*, 919 S.W.2d 777, 782 (Tex.App.—Houston [14th Dist.] 1996, writ denied). A person is entitled to derived judicial immunity if the activities undertaken by the party are normal functions of the delegating or appointing judge. *Byrd v. Woodruff*, 891 S.W.2d 689, 707 (Tex.App.—Dallas 1994, writ dism'd by agr.).

In the case of a guardian, the activities undertaken are not functions of the court. A guardian takes possession of a ward's property and manages the estate of the ward as a prudent person would manage their own property. Tex. Prob. Code Ann. § 768 (Vernon Supp.2000). Possessing and managing property are not activities generally undertaken by courts.

Further, state law subjects guardians, unlike judges, to liability. The probate code specifically states that a guardian may be held liable for failing to exercise due diligence in collecting all claims and debts due the ward and recovering possession of the ward's property. Tex. Prob. Code Ann. § 772 (Vernon Supp.2000). It has also been recognized that guardians owe a fiduciary duty to wards and may be held liable if they breach that duty. *Byrd*, 891 S.W.2d at 706. Appellant is not entitled to the protection of absolute judicial immunity. Issue number five is overruled.

## The Evidentiary Challenge

In his second and third issues, appellant argues that the evidence admitted at trial was legally and factually insufficient to establish a completed gift of the CD and thus Pena lacked the property interest necessary to support her claims of conversion and fraud.

### The "No Evidence" Standard of Review

A "no evidence" standard of review is applied when the party not bearing the burden of proof challenges a finding of fact by arguing that the evidence is legally insufficient to support the finding. *Hickey v. Couchman*, 797 S.W.2d 103, 109 (Tex. App.—Corpus Christi 1990, writ denied)(citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983)). If any evidence of probative value supports the finding, we must uphold the jury's finding. *Id.* When reviewing a legal sufficiency challenge, we consider all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *Associated Indem. Corp. v. CAT Contracting*, 964 S.W.2d 276, 286 (Tex. 1998); *Norwest Mortgage, Inc. v. Salinas*, 999 S.W.2d 846, 853 (Tex.App.—Corpus Christi 1999, pet. denied). A legal sufficiency challenge is sustained when the record discloses: (1) that there is a complete absence of evidence of a vital fact; (2) that the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a scintilla; or (4) that the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997); *Norwest Mortgage*, 999 S.W.2d at 853.

### The Gift Question

To establish the existence of a gift, a party must show there was the intent to make a gift, delivery of the property, and acceptance of the property. *Pankhurst v. Weitinger & Tucker*, 850 S.W.2d 726, 730 (Tex.App.—Corpus Christi 1993, writ denied). The donor must, at the time she delivers the subject matter of the gift to the donee, intend the immediate divestiture of her ownership rights and the immediate and unconditional vesting of ownership rights in the donee. *Wells v. Sansing*, 151 Tex. 36, 245 S.W.2d 964, 965 (Tex.1952); *Yates v. Blake*, 491 S.W.2d 751, 753 (Tex.Civ.App.—Corpus Christi 1973, no writ). Until a donor has divested herself, absolutely and irrevocably, of the title, dominion, and control of the subject of the gift, she has the power to revoke it. *Yates*, 491 S.W.2d at 753–54. The donee does not have ownership of the subject matter of the gift until the gift is completed, and complete ownership has been transferred from the donor to the donee. *Id.* at 754. The burden of proving a gift is on the party claiming the gift. *Pankhurst*, 850 S.W.2d at 730. The property that Pena claims was the subject of a gift to her from Hazel Edwards was a CD worth $99,000. Although there was testimony about Hazel's intent to give Pena the CD, the only evidence of delivery of the CD is the CD itself.

A CD is an instrument containing an acknowledgment by a bank that a sum of money has been received by the bank and a promise by the bank to repay the sum of money. TEX. BUS. & COM. CODE ANN. § 3.104(j) (Vernon Supp.2000); *May v. Walter*, 956 S.W.2d 138, 142 (Tex.App.—Amarillo 1997, writ denied). The CD in question states that it "evidences a deposit in the names of Hazel M. Edwards or Maria Concepcion Pena." A notation on the certificate states that Pena's name was added on June 9, 1989.

When a person adds a name to a CD, the person adding the name retains ownership in the CD as a payee. *Yates v. Blake*, 491 S.W.2d at 754. By keeping her own name on the CD, Hazel Edwards did not divest herself absolutely and irrevocably of her ownership in the CD, but rather retained ownership in the CD. She still had the power to exchange the document for cash at any time. *Id.* (party who added a name to certificates of deposit retained ownership as payee and thus had the power to delete the added name at any time and the power to exchange the documents for cash). The fact that Pena had possession of the certificate paper does not confer ownership upon her because a CD is intangible personal property. *May v. Walter*, 956 S.W.2d 138, 142 (Tex.App.—Amarillo 1997, writ denied). The physical certificate is simply a record of the debt owed by the bank, it is not the property. *Id.*

In the case now before us, there is no evidence that Hazel Edwards made a completed gift of the CD to Pena. In fact, the evidence clearly establishes that the gift was not completed. The evidence of delivery of the gift, in the form of the CD, shows that Hazel Edwards, by retaining an interest in the CD, had not divested herself, absolutely and irrevocably, of her ownership of the property that Pena claims to have received as a gift from Hazel Edwards, nor was there an unconditional vesting of ownership rights in Pena. Pena did not have ownership of the CD because the gift had not been completed. *Yates*, 491 S.W.2d at 754.

### Conversion and Fraud

Appellant argues that, because Hazel Edwards did not complete the gift of the CD, Pena lacked ownership in the CD and, therefore, the jury could neither find that appellant had converted the CD, nor that he had committed fraud in obtaining the certificate from Pena.

Conversion is the wrongful exercise of dominion and control over another's property in denial of or inconsistent with that person's rights. *Superior*

*Phones, Ltd., v. Cherokee Communications, Inc.,* 964 S.W.2d 325, 331 (Tex. App.—Corpus Christi 1998, pet. denied). In the case now before this court, the property in question is the CD and, as discussed, Pena did not own the CD. Because Pena did not own the CD, appellant did not exercise dominion and control over Pena's property in denial of her ownership rights. There is no evidence to support the jury's finding that appellant committed conversion against Pena. We now address the question of fraud.

A party asserting common-law fraud must show that:

(1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the other party; (5) the party acted in reliance upon the representation; and (6) the party suffered injury.

*Johnson & Higgins of Texas, Inc. v. Kenneco Energy,* 962 S.W.2d 507, 524 (Tex. 1998).

In the instant case, Pena alleged that appellant made misrepresentations to her in order to obtain the CD from her and use it to purchase another CD solely in the name of Hazel Edwards. Because the new CD did not include her name as a payee, Pena was unable to redeem it as she could have done with the original CD. The harm Pena claims to have suffered is the loss of the CD.

As discussed above, Pena did not own the CD; therefore, there is no evidence that she suffered any injury. Pena lost nothing because she owned nothing. Pena has failed to show any injury which may have resulted from appellant's representations. Further, because the CD listed Hazel Edwards as a payee, appellant could have redeemed the CD at the bank without the actual physical certificate.

Nothing appellant told Pena in the course of obtaining the physical certificate was material, as he did not need the paper to access the money. Fraud requires *material* misrepresentation. *Johnson & Higgins, Inc.,* 962 S.W.2d at 524. There is no evidence to support the jury's finding of fraud.

Appellant's second and third issues are sustained. We find that there is no evidence to support the jury's findings that appellant had committed conversion and fraud. Therefore, we reverse the judgment of the trial court and render judgment that the appellee, plaintiff in the trial, take nothing.

We do not address appellant's fourth issue, which challenges the amount of the damages awarded by the trial court, because our ruling as to the second and third issues renders this issue unnecessary to the final disposition of this appeal. TEX. R. APP. P. 47.1.

## Appellant's Counterclaim Against Pena

Appellant, in a counterclaim, alleged that Pena had breached her fiduciary duty to Hazel. With his sixth and final issue on appeal, appellant challenges the jury's finding that Pena did not breach her fiduciary duty to Hazel Edwards. Appellant argues that the evidence established that Pena breached her fiduciary duty as a matter of law, or in the alternative, that the evidence was factually insufficient to support the jury's finding. Because he brought the claim against Pena for breach of fiduciary duty, appellant, as the plaintiff for this cause of action, bore the burden of proof at trial. *See Maritime Overseas Corp. v. Ellis* 977 S.W.2d 536, 538 (Tex.1996)(plaintiff bears the burden of proof).

### Legal and Factual Sufficiency Standards of Review

When a party bearing the burden of proof raises a legal sufficiency challenge to an adverse jury finding, we apply a two-part test. *Hickey v. Couchman,* 797

S.W.2d 103, 109 (Tex.App.—Corpus Christi 1990, writ denied). First, we examine the record for evidence supporting the finding of fact. *Id.* If no evidence supports the finding, we then "determine from the record whether the contrary proposition is established as a matter of law." *Id.*

■ When a party who bears the burden of proof challenges the factual sufficiency of the evidence to support a jury's adverse finding, the party must show that the finding is "against the great weight and preponderance of the evidence." *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983); *Correa v. General Motors Corp.,* 948 S.W.2d 515, 519 (Tex.App.—Corpus Christi 1997, no writ). When reviewing a jury verdict to determine the factual sufficiency of the evidence, we must consider all the evidence, and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). We may not reverse "simply because we conclude the evidence preponderates toward an affirmative jury finding." *Correa,* 948 S.W.2d at 519. When reviewing the evidence, we must bear in mind that it is the jury's role, not that of the appellate court, to judge the credibility of the witnesses, assign the weight to be given the testimony, and to resolve inconsistencies and conflicts in the witnesses' testimony. *Corpus Christi Area Teachers Credit Union v. Hernandez,* 814 S.W.2d 195, 197 (Tex.App.—San Antonio 1991, no writ).

### The Fiduciary Duty Evidence

■ Texas law recognizes that even informal relationships may give rise to a fiduciary duty. *Crim Truck & Tractor v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 594 (Tex.1992); *Texas Bank & Trust Co. v. Moore,* 595 S.W.2d 502, 507 (Tex. 1980). A fiduciary relationship may arise when a person trusts in and relies upon another person, whether the relationship is moral, social, domestic or personal, and the trust and reliance has been betrayed. *Crim Truck & Tractor Co.,* 823 S.W.2d at 594.

■ Much of the evidence going to the claim of fiduciary duty was testimony. Several witnesses testified that Hazel Edwards was generous and often gave gifts to people close to her, including Pena. Witnesses testified that Pena had been a long-time, helpful, companion of Hazel Edwards for many years and that she had been particularly helpful as Hazel's health declined. Pena was the first person to suggest that Hazel should be placed under a guardianship. Although appellant brought forth documentary evidence and testimony that suggested that Pena may have been involved in depleting Hazel's estate, Pena countered with testimony that the expenses were either justified or were attributable to the actions of persons other than Pena. Pena was with Hazel when Hazel passed away.

Appellant directs us to the testimony from witnesses that Hazel had expressed fears that Pena would have her placed in a nursing home. Hazel's expressions of fear were made in the months preceding Hazel being declared incompetent and placed under the guardianship of appellant. The jury could reasonably have believed Hazel's fears were a product of the dementia which ultimately required that she be declared incompetent. Furthermore, it is also not necessarily evidence of bad intent on Pena's part that she wanted Hazel placed in a nursing home: the evidence indicates that as Hazel's health declined she required a great deal of care on a daily basis.

■ Because the evidence addressing Pena's alleged breach of fiduciary duty is mainly testimonial, to determine whether Pena had betrayed Hazel's trust would require determinations as to the credibility of the testifying witnesses. We do not pass upon the witnesses' credibility; that is a determination reserved to the judgment of the jury. *Maritime Overseas*

*Corp.*, 971 S.W.2d at 407; *Corpus Christi Area Teachers Credit Union*, 814 S.W.2d at 197. There was ample testimony that Pena did not violate Hazel's trust, but rather, that she was a loyal employee and friend. There is evidence supporting the jury's finding that Pena did not breach her fiduciary duty to Hazel Edwards, and the finding is not contrary to the great weight and preponderance of the evidence. Appellant's sixth issue is overruled.

## Conclusion

The district court had jurisdiction over the suit now before us on appeal. The evidence is legally and factually sufficient to support the finding by the jury that Pena did not violate a fiduciary duty to Hazel Edwards. Appellant, acting as guardian of Hazel Edwards, was not entitled to judicial immunity; however, no evidence supports the jury's finding that Pena received the disputed CD as a gift. Because the jury's findings of conversion and fraud require that Pena owned the CD as a result of receiving it as a gift, no evidence supports these findings. The judgment of the trial court is REVERSED and judgment RENDERED for the appellant.