NUMBER 13-05-264-CV


COURT OF APPEALS


THIRTEENTH DISTRICT OF TEXAS


CORPUS CHRISTI - EDINBURG


 

MARY ETNA MCNAIR, Appellant,

v.
 

JAMES DEAL, and

KAREN MACMANUS, Appellees.

 

On appeal from the County Court at Law No. 1


of Nueces County, Texas.

 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Rodriguez and Castillo 


Memorandum Opinion by Chief Justice Valdez



 The instant appeal stems from the alleged misappropriation of certificates of deposit
(CDs) belonging to the now-deceased Bernice Ramfield, but jointly titled as "Ramfield or
Mary Etna McNair." Mary Etna McNair, Ramfield's friend and appellant, intervened in a
dispute between Ramfield's heirs and the independent executor of the estate of James
Deal, Ramfield's nephew who predeceased Ramfield, and who had acted as her fiduciary
during her later years. McNair sued several of Ramfield's family members for conversion
of the CDs at issue in this case and fraud. The trial court found that there was no evidence
establishing McNair's interest in the family dispute and entered summary judgments
denying all of McNair's claims. McNair appeals the summary judgments. The only issue
properly before this Court is whether the trial court erred in granting summary judgment
against McNair's conversion claims. See Tex. R. App. P. 38.1(h) (requiring that for an issue
to be properly before this court, the issue must be supported by argument and authorities). (1) 
We affirm the trial court's judgment.

I. BACKGROUND

A. Factual Background

 Ramfield died at the age of ninety-two after a ten-year struggle with Alzheimer's
disease. Her family and a close friend are now engaged in a classic dispute over estate
funds. McNair alleges that throughout the 1980s, Ramfield deposited over one hundred-twenty four thousand dollars into CDs titled "Bernice Ramfield or Mary Etna McNair." 
McNair did not contribute funds to the CDs. Ramfield began suffering from Alzheimer's in
the early 1990s. During Ramfield's battle with Alzheimer's, James Deal, Ramfield's
nephew and only close relative, became Ramfield's attorney-in-fact and in 1994 was
appointed guardian of Ramfield's person and estate. James Deal's daughter, Karon
McManus, was paid to care for Ramfield's person until Ramfield entered a nursing home. 
McNair alleges that while James Deal was in charge of Ramfield's finances he converted
the jointly-held CDs for his benefit and the benefit of his children. James Deal died in
1999. Doris Deal, James Deal's wife, was appointed independent executor of her
husband's estate. Ramfield died intestate in 2000. Because James Deal predeceased
Ramfield, James Deal's children, Karon McManus and Kyle Deal, were Ramfield's only
heirs. Karon was appointed administrator of Ramfield's estate.

B. Procedural Background

 The underlying lawsuit was originally a dispute between Karon and Doris Deal that
began in September 2001. Karon, primarily in her capacity as administrator of Ramfield's
estate, brought several causes of action sounding in conversion and fraud against Doris
Deal, in her individual capacity and as independent executor of James Deal's estate. 
Karon claimed that James Deal transferred real and personal property out of Ramfield's
sole possession into joint accounts from which he benefitted. Karon further alleged that
during the year between the deaths of James Deal and Ramfield, Doris Deal posed as
successor guardian of Ramfield's estate to obtain funds from Ramfield. An order
dismissing with prejudice the claims between Karon and Doris Deal was signed in
September 2002. 

 However, McNair intervened before the dismissal. By her sixth amended petition
in intervention, McNair claimed that James Deal, Doris Deal, Karon McManus, and Kyle
Deal had converted the CDs. She also alleged several acts of fraud against the
aforementioned individuals. Doris Deal filed both traditional and no-evidence motions for
summary judgment against McNair; Karon filed a traditional motion for summary judgment. 
The trial court granted Doris Deal's no-evidence motion for summary judgment and Karon
McManus's traditional motion for summary judgment. McNair appeals from both summary
judgments.

II. DISCUSSION

A. Standard of Review 

1. Traditional Summary Judgment

 We review summary judgments de novo. Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005). Traditional summary judgment is proper only when the
movant establishes that there is no genuine issue of material fact and that the movant is
entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). In reviewing a traditional
summary judgment, we must indulge every reasonable inference in favor of the
nonmovant, take all evidence favorable to the nonmovant as true, and resolve any doubts
in favor of the nonmovant. Id. A defendant who moves for traditional summary judgment
on the plaintiff's claims must conclusively disprove at least one element of each of the
plaintiff's causes of action. Little v. Tex. Dep't of Criminal Justice, 148 S.W.3d 374, 381
(Tex. 2004). 

2. No-Evidence Summary Judgment

 A no-evidence motion for summary judgment is essentially a directed verdict granted
before trial, to which we apply a legal sufficiency standard of review. King Ranch, Inc. v.
Chapman, 118 S.W.3d 742, 750-51 (Tex. 2003); Jackson v. Fiesta Mart, Inc., 979 S.W.2d
68, 70 (Tex. App.-Austin 1998, no pet.). In general, a party seeking a no-evidence
summary judgment must assert that no evidence exists as to one or more of the essential
elements of the nonmovant's claims on which it would have the burden of proof at trial. 
Holmstrom v. Lee, 26 S.W.3d 526, 530 (Tex. App.-Austin 2000, no pet.). Once the
movant specifies the elements on which there is no evidence, the burden shifts to the
nonmovant to raise a fact issue on the challenged elements. Tex. R. Civ. P. 166a(i). A
no-evidence summary judgment will be sustained when (1) there is a complete absence
of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving
weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove
a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the
opposite of a vital fact. King Ranch, 118 S.W.3d at 751. We view the evidence in the light
most favorable to the nonmovant, disregarding all contrary evidence and inferences. Id.

B. Account Ownership


 From McNair's questionably adequate brief, (2) we are able to ascertain only one
argument on appeal. See Tex. R. App. P. 38.1(h) (providing that the brief must contain a
clear and concise argument for the contentions made, with appropriate citations to
authorities and to the record). McNair asserts that the trial court erred in granting summary
judgments on her conversion claims because there was evidence of an essential element
of a conversion claim in that she either had legal possession of the funds in the CDs or
was entitled to possession of the funds. See Edmunds v. Sanders, 2 S.W.3d 697, 703
(Tex. App.-El Paso 1999, pet. denied). The thrust of McNair's argument is that her ability
to draw on the jointly-titled CDs conferred a right of possession to the funds in the CDs,
and the closing of the CDs by Ramfield's family members wrongfully interfered with her
right to possession.

 McNair is mistaken in her belief that a non-contributing party's ability to draw on a
joint account funded by another automatically vests legal possession of the funds in the
account with the non-contributing party. Section 437 of the Texas Probate Code provides
that "the provisions of Sections 438 through 440 of this code that concern beneficial 
ownership as between parties . . . are relevant only to controversies between these
persons and their creditors and other successors. . . ." Tex. Prob. Code Ann. § 437
(Vernon 2003). Therefore, McNair cannot assert ownership of the funds because she did
not contribute any money into the CDs. See Id. § 438(a) (setting out that a joint account
belongs, during the lifetime of all parties, to the parties in proportion to the net contributions
by each to the sums on deposit, unless there is clear and convincing evidence of a
different intent). 

 Furthermore, there is no direct, written evidence that Ramfield intended to gift
McNair the CDs. See Edwards v. Pena, 38 S.W.3d 191, 197-98 (Tex. App.-Corpus Christi
2001, no pet.) (holding that a depositor who added another's name to a CD did not divest
herself absolutely and irrevocably of her ownership in the CD, but rather retained
ownership). 

 Conversion is the unauthorized and wrongful assumption and exercise of dominion
and control over the personal property of another to the exclusion of, or inconsistent with,
the owner's rights. Waisath v. Lack's Stores, Inc., 474 S.W.2d 444, 447 (Tex. 1971); Smith
v. Maximum Racing, Inc., 136 S.W.3d 337, 341 (Tex. App.-Austin 2004, no pet.). Money
is subject to conversion only when it can be identified as a specific chattel and not where
an indebtedness may be discharged by the payment of money generally. See Newsome
v. Charter Bank Colonial, 940 S.W.2d 157, 161 (Tex. App.-Houston [14th Dist.] 1996, writ
denied); Estate of Townes v. Townes, 867 S.W.2d 414, 419 (Tex. App.--Houston [14th
Dist.] 1993, writ denied). An action for conversion of money will only lie where the money
is (1) delivered for safekeeping, (2) intended to be kept segregated, (3) substantially in the
form in which it is received or an intact fund, and (4) not the subject of a title claim by its
keeper. Newsome, 940 S.W.2d at 161. 

 McNair fails to meet the right of possession element of a conversion claim because
her ability to withdraw funds from the jointly-held CDs did not vest her with any ownership
interests in the funds. Therefore, the trial court did not err in granting the traditional and
no evidence motions for summary judgment. McNair's sole issue is overruled.

III. CONCLUSION

 The final judgment of the trial court is affirmed. Tex. R. App. P. 43.2(a).


 

 ROGELIO VALDEZ

 Chief Justice


Memorandum Opinion delivered 

and filed this the 30th day of November, 2006.
1. In the issues section of her brief, McNair argues that the trial court erred in finding that she (1) did
not have sufficient interest in Ramfield's funds to support standing, and (2) did not have sufficient interest in
the estates at issue. However, the body of McNair's brief fails to mention standing with regard to her pleaded
causes of action - conversion claims, fraud claims, and claims against the estates. In the interest of justice,
we construe McNair's only briefed argument as her sole issue on appeal. See Columbia Med. Ctr. of Las
Colinas v. Bush, 122 S.W.3d 835, 841 n.1 (Tex. App.-Fort Worth 2003, pet. denied).
2. We note that McNair cites two cases in her entire brief, of which only one is a published opinion. 
Of the arguments contained in her one page argument section, only one argument is supported by authority.