

# IN THE
# TENTH COURT OF APPEALS

## No. 10-08-00145-CV

**CONNIE NIPP,**

                                                                                      **Appellant**

 **v.**

**TERRY LEE BROUMLEY, INDIVIDUALLY
AND AS INDEPENDENT EXECUTOR OF THE
ESTATE OF WALTERINE OPAL BROUMLEY,**

                                                                                      **Appellee**

### From the County Court at Law No. 2
### Johnson County, Texas
### Trial Court No. P200418368

## O P I N I O N

Connie Nipp and Terry Broumley dispute whether three certificates of deposit belong to the estate of their deceased mother or were properly cashed by Broumley about a week before their mother's death.  Following a bench trial, the trial court ruled in Broumley's favor but ordered him to pay a small portion of Nipp's attorney's fees. Nipp contends: (1) there is no evidence or factually insufficient evidence to support the court's findings of fact with regard to ownership of the funds represented by the CD's;

(2) the court's conclusions of law with regard to ownership are erroneous; (3) the judgment cannot be affirmed on a gift theory because the court made no findings of fact on even one element of such theory and there is no evidence or factually insufficient evidence to support recovery under this theory; (4) the judgment cannot be affirmed on the theory that the CD's were P.O.D. accounts because the court made no findings of fact on even one element of such theory and there is no evidence or factually insufficient evidence to support recovery under this theory; and (5) because the court erred in its ownership determination, the court erred by failing to award Nipp all of her attorney's fees. We will reverse and render in part and reverse and remand in part.

## Background

Walterine Opal Broumley initially purchased three CD's "in the mid to late [19]80's." The CD's were payable to "Mrs. H. O. Broumley or Terry Broumley."[1] Over the years, Mrs. Broumley renewed the CD's when they matured. Terry used them as collateral on occasions for various loans. Mrs. Broumley was diagnosed with inoperable cancer in late 2003 and was given about five months to live. Terry cashed the three CD's (collectively worth about $76,000) eight days before Mrs. Broumley died.

Nipp had learned about the existence of the CD's while caring for her mother in her last months. After Nipp discovered that the CD's were not included in the inventory of the assets of her mother's estate, she filed suit seeking a declaration that

---

[1] Nipp testified that the initials "H. O." referred to her father Herman Otis Broumley who died in 1978.

the CD's were property of the estate and an order requiring Terry to reimburse the estate for their value.

The trial court determined that the funds represented by the CD's were jointly owned by Terry and Mrs. Broumley, that Terry had the right to cash the CD's, and that the CD's were not assets of the estate on the date of Mrs. Broumley's death. Nevertheless, the court ordered Terry to pay $625 of the $19,063 in attorney's fees sought by Nipp.[2]

## Issues Presented

The items listed in the "Issues Presented" section of Nipp's brief do not precisely correspond with the issues outlined in her table of contents or in the argument portion of her brief. Restated, Nipp contends that the court erroneously determined that Terry owned the CD's because: (1) there is no evidence and factually insufficient evidence to support such a finding; (2) the court's conclusions of law with respect to ownership are erroneous; (3) the judgment cannot be affirmed on a gift theory because the court made no findings of fact on even one element of such theory and there is no evidence or factually insufficient evidence to support recovery under this theory; and (4) the judgment cannot be affirmed on the theory that the CD's were P.O.D. accounts because the court made no findings of fact on even one element of such theory and there is no evidence or factually insufficient evidence to support recovery under this theory.

---

[2]     Terry represented himself at trial. The court calculated this sum by applying the hourly rate testified to by Nipp's attorney to a delay in trial of two and one-half hours occasioned by Terry's inability to have a witness in court sooner.

On the issue of attorney's fees, Nipp contends that, because the court erred in its ownership determination, the court erred by failing to award her all of her attorney's fees.

## Standard of Review

Findings of fact in a bench trial have the same force and dignity as a jury's verdict upon jury questions. When challenged on appeal, the findings are not conclusive on the appellate court if there is a complete reporter's record, as there is here. Generally, we will not disturb a trial court's findings if there is evidence of probative force to support them.

Although we show deference to a trial court's findings, those findings are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's answers. We review the trial court's conclusions of law *de novo*. Under *de novo* review, the reviewing court exercises its own judgment and redetermines each legal issue.

*Wells Fargo Bank, N.A. v. Citizens Bank of Tex., N.A.*, 181 S.W.3d 790, 796 (Tex. App.—Waco 2005, pet. denied) (citations omitted).

## Ownership

Nipp contends that there is no evidence and factually insufficient evidence to support the court's findings of fact with regard to ownership of the funds represented by the CD's insofar as ownership of multiple-party accounts is defined by sections 436 through 438 of the Probate Code. She also contends that the court's conclusions of law with regard to ownership are erroneous.

Section 436 provides various definitions for Chapter XI of the Probate Code which are relevant to the parties' dispute. *See* TEX. PROB. CODE ANN. § 436 (Vernon 2003). Certificates of deposit are included within the definition of "accounts." *Id.* §

436(1); *Bandy v. First State Bank*, 835 S.W.2d 609, 615 (Tex. 1992). Joint accounts like the CD's at issue are considered "multiple-party accounts." TEX. PROB. CODE ANN. § 436(5). And a "party" to such accounts is defined as "a person who, by the terms of the account, has a present right, subject to request, to payment from a multiple-party account." *Id.* § 436(7).

Section 438(a) states, "A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." *Id.* § 438(a) (Vernon 2003). And section 437 explains that the pertinent statutes concern only the beneficial ownership of such accounts and have no bearing on the right of withdrawal.

> The provisions of Sections 438 through 440 of this code that concern beneficial ownership as between parties, or as between parties and P.O.D. payees or beneficiaries of multiple-party accounts, are relevant only to controversies between these persons and their creditors and other successors, and have no bearing on the power of withdrawal of these persons as determined by the terms of account contracts.

*Id.* § 437 (Vernon 2003).

Chapter XI also contains provisions which address the right of withdrawal and a bank's obligations with regard to that right. Section 444 provides:

> Financial institutions may enter into multiple-party accounts to the same extent that they may enter into single-party accounts. A multiple-party account may be paid, on request, to any one or more of the parties. A financial institution shall not be required to inquire as to the source of funds received for deposit to a multiple-party account, or to inquire as to the proposed application of any sum withdrawn from an account, for purposes of establishing net contributions.

*Id.* § 444 (Vernon 2003).

Section 445 provides in pertinent part, "Any sums in a joint account may be paid, on request, to any party without regard to whether any other party is incapacitated or deceased at the time the payment is demanded." *Id.* § 445 (Vernon 2003). And section 448 provides in pertinent part, "Payment made as provided by Section 444, 445, 446, or 447 of this code discharges the financial institution from all claims for amounts so paid whether or not the payment is consistent with the beneficial ownership of the account as between parties, P.O.D. payees, or beneficiaries, or their successors." *Id.* § 448 (Vernon 2003).

In addition to these statutes, the Uniform Commercial Code contains relevant provisions. Under the UCC, "'[c]ertificate of deposit' means an instrument containing an acknowledgment by a bank that a sum of money has been received by the bank and a promise by the bank to repay the sum of money. A certificate of deposit is a note of the bank." TEX. BUS. & COM. CODE ANN. § 3.104(j) (Vernon Supp. 2008); *May v. Walter*, 956 S.W.2d 138, 142 (Tex. App.—Amarillo 1997, pet. denied); *see Thompson v. Thompson*, 149 Tex. 632, 236 S.W.2d 779, 791 (1951) (pre-UCC decision);[3] *Dallas/Fort Worth Airport Bank v. Dallas Bank & Trust Co.*, 667 S.W.2d 572, 575 (Tex. App.—Dallas 1984, no writ) (citing previous version of UCC).

"If an instrument is payable to two or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument." TEX. BUS. & COM. CODE ANN. § 3.110(d) (Vernon 2002).

---

[3] The Uniform Commercial Code was not enacted in Texas until 1965. *See* Uniform Commercial Code, 59th Leg., R.S., ch. 721, 1965 Tex. Gen. Laws 1.

As Comment 4 to section 3.110 explains, "If an instrument is payable to X or Y, either is the payee and if either is in possession that person is the holder and the person entitled to enforce the instrument." *Id.* cmt. 4.

It is important to distinguish between the right of negotiation or enforcement of the CD's themselves and beneficial ownership of the funds the CD's represent. *See* Kenneth McLaughlin, Jr., *Joint Accounts, Totten Trusts, and the Poor Man's Will*, 44 TEX. B.J. 871, 875 (1981). A CD constitutes intangible personal property which is a record of the debt owed by the bank to the holder(s) but does not establish ownership of the funds evidenced by the CD. *See Edwards v. Pena*, 38 S.W.3d 191, 197 (Tex. App.—Corpus Christi 2001, no pet.); *May*, 956 S.W.2d at 142; *see also* TEX. TAX CODE ANN. § 1.04(6) (Vernon 2008). Section 438 governs the beneficial ownership of funds evidenced by a multiple-party CD. *See* TEX. PROB. CODE ANN. §§ 437, 438; *Stegall v. Oadra*, 868 S.W.2d 290, 292 (Tex. 1993).

Conversely, sections 444 through 450 are designed primarily for the benefit and protection of the bank and do not govern ownership of the funds represented by a multiple-party CD. *See Stegall*, 868 S.W.2d at 293; *Bandy*, 835 S.W.2d at 616; *see also Chopin v. Interfirst Bank Dallas, N.A.*, 694 S.W.2d 79, 83 (Tex. App.—Dallas 1985, writ ref'd n.r.e.).

Here, the court stated in Finding of Fact No. VI that Terry and Mrs. Broumley "owned" the three CD's. In Conclusion of Law No. XII,[4] the court found as a matter of

---

[4]    We are not bound by the labels the court applied to its findings of fact and conclusions of law. *See Ray v. Farmers State Bank of Hart*, 576 S.W.2d 607, 608 n.1 (Tex. 1979); *Clay v. Mercado*, 224 S.W.3d 277, 283 n.1 (Tex. App.—El Paso 2005, no pet.).

law that they were "joint owners" of the CD's when Terry cashed them. In Conclusion of Law No. XIII, the court found as a matter of law that Terry then had "the present right . . . to request and receive payment of the sums on deposit" evidenced by the CD's. And in Conclusion of Law No. XIV, the court found as a matter of law that (1) these "sums of deposit . . . were multi-party accounts jointly owned by [Mrs. Broumley and Terry]" when he cashed the CD's and (2) these sums "were not assets of the estate" of Mrs. Broumley at her death.

It appears from the court's findings of fact and conclusions of law that the court based its ownership determination solely on Terry's status as a party to the CD's who had an undisputed right to withdraw the funds represented by the CD's. *See* TEX. PROB. CODE ANN. §§ 437, 444, 445; *see also* TEX. BUS. & COM. CODE ANN. § 3.110(d). However, beneficial ownership of the funds is determined by application of section 438 and is distinct from the right of withdrawal. *See* TEX. PROB. CODE ANN. §§ 437, 438; *Stegall*, 868 S.W.2d at 293; *Bandy*, 835 S.W.2d at 616; *Chopin*, 694 S.W.2d at 83.

It is undisputed that Mrs. Broumley was the sole source of the funds at issue. Therefore, she retained beneficial ownership of these funds at the time of their withdrawal absent clear and convincing evidence to the contrary. *See* TEX. PROB. CODE ANN. § 438(a).

## Gift

At trial, Terry took the position that the funds were a gift to him from his mother. Much of the parties' closing argument focused on whether Terry proved the elements of a gift. Nipp argues that the court's findings are silent on this theory. She argues in the

alternative that there is no evidence or factually insufficient evidence to support a finding on this theory.

Nipp's contention that the court made no findings on any element of the gift theory is based on Rule of Civil Procedure 299, which provides:

> When findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein. The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact; but when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment. Refusal of the court to make a finding requested shall be reviewable on appeal.

TEX. R. CIV. P. 299.

> We begin by examining the elements necessary to establish the existence of a gift.

> A gift is a voluntary transfer of property to another made gratuitously and without consideration. Three elements are required to establish the existence of a gift: (1) the donor's intent to make a gift; (2) delivery of the property; and (3) acceptance of the property. Donative intent must exist at the time of the transfer, not at the time of a subsequent event.

*Lopez v. Lopez*, 271 S.W.3d 780, 788 (Tex. App.—Waco 2008, no pet.) (citations omitted); *accord Magness v. Magness*, 241 S.W.3d 910, 912 (Tex. App.—Dallas 2007, pet. denied).

The court stated in Finding of Fact No. XII that the bank "paid all sums on deposit" for the CD's to Terry. We construe this as a finding that the funds were delivered to Terry, and delivery is one of the elements of a gift. *See Bishop v. Bishop*, 359 S.W.2d 869, 871 (Tex. 1962) (delivery of gift may be accomplished by actual or constructive delivery); *Smith v. Smith*, 607 S.W.2d 617, 620 (Tex. Civ. App.—Waco 1980,

no writ) (same).  Therefore, we will examine the record to determine whether there is evidence to support implied findings on the other two elements.  *See* TEX. R. CIV. P. 299.

Terry bore the burden of proving that a gift was made.  *Hayes v. Rinehart*, 65 S.W.3d 286, 289 (Tex. App.—Eastland 2001, no pet.); *Edwards*, 38 S.W.3d at 197; *Dorman v. Arnold*, 932 S.W.2d 225, 228 (Tex. App.—Texarkana 1996, no writ); *cf. Akin v. Akin*, 649 S.W.2d 700, 703 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.) (appellee had burden to prove gift to overcome community-property presumption).  He had to prove the making of a gift by clear and convincing evidence.  *See* TEX. PROB. CODE ANN. § 438(a); *Hayes*, 65 S.W.3d at 289.  Because of this elevated burden of proof at trial, an elevated standard of review also applies on appeal.  *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 627 (Tex. 2004).

Under a no-evidence review, we view all the evidence in the light most favorable to the court's finding, taking into account contrary undisputed evidence, to determine whether a reasonable factfinder could have formed a firm belief or conviction regarding the making of a gift.  *Id.*  Under a factual sufficiency review, we ask whether the "disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding."  *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (citing *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)).

The alleged donor's intent is the primary issue.  *Hayes*, 65 S.W.3d at 289; *Lee v. Lee*, 43 S.W.3d 636, 642 n.4 (Tex. App.—Fort Worth 2001, no pet.); *Dorman*, 932 S.W.2d at 227; *Thompson v. Lawson*, 793 S.W.2d 94, 96 (Tex. App.—Eastland 1990, writ denied).

> Among the indispensable conditions of a valid gift are the intention of the donor to absolutely and irrevocably divest himself of the title, dominion, and control of the subject of the gift *in praesenti* at the very time he undertakes to make the gift; . . . the irrevocable transfer of the present title, dominion, and control of the thing given to the donee, so that the donor can exercise no further act of dominion or control over it.

*Harmon v. Schmitz*, 39 S.W.2d 587, 589 (Tex. Comm'n App. 1931, judgm't adopted) (quoting *Allen-West Comm'n Co. v. Grumbles*, 129 F. 287, 290 (8th Cir. 1904)). Thus the requisite donative intent is established by, among other things, evidence that the donor intended an *immediate and unconditional* divestiture of his or her ownership interests and an immediate and unconditional vesting of such interests in the donee. *See Wells v. Sansing*, 151 Tex. 36, 245 S.W.2d 964, 965 (Tex. 1952); *Edwards*, 38 S.W.3d at 197; *Oadra v. Stegall*, 871 S.W.2d 882, 890 (Tex. App.—Houston [14th Dist.] 1994, no writ); *Thompson*, 793 S.W.2d at 96; *Akin*, 649 S.W.2d at 703.

Here, Terry testified that Mrs. Broumley first purchased the CD's about twenty years ago and renewed them from time to time as they matured. Terry used them as collateral on occasions for various loans, but there is no evidence that he ever withdrew any of the funds represented by the CD's until eight days before Mrs. Broumley's death. Terry testified that "[t]here were several instances" over the years when Mrs. Broumley discussed with him her intent that he have those funds "to use as [he] needed or as [he] pleased." The last time they had such a conversation was at some unspecified time "before the bad days of her illness" when she started receiving hospice care.

During this same period, Terry conceded that Mrs. Broumley retained the authority to cash the CD's herself. She kept the CD's in a lock box in her home where they remained until Terry retrieved them and cashed them at the bank.

Under similar factual circumstances, Texas courts have consistently concluded that no gift of funds was made. *See Hayes*, 65 S.W.3d at 289; *McConathy v. McConathy*, No. 05-95-1036-CV, 1997 WL 145172, at *4 (Tex. App.—Dallas Apr. 1, 1997, writ denied) (not designated for publication); *Dorman*, 932 S.W.2d at 227-28; *Oadra*, 871 S.W.2d at 893; *Akin*, 649 S.W.2d at 704-05; *see also Ayers v. Mitchell*, 167 S.W.3d 924, 929-30 (Tex. App.— Texarkana 2005, no pet.) (applying gift law to alleged transfer of trust property). First, the evidence establishes that days or weeks passed between the date of Terry's last conversation with Mrs. Broumley about the CD's and the date he cashed them. And second, Mrs. Broumley retained control over the funds represented by the CD's until the date Terry withdrew those funds. Thus, no reasonable factfinder could have formed a firm belief or conviction that an immediate and unconditional divestiture of Mrs. Broumley's ownership occurred on the occasion of their last conversation regarding her intentions about the CD's. *Id.*

### Other Theories

Nipp contends that the court did not make a finding on even one element of the alternative theory that the CD's were P.O.D. accounts. She argues in the alternative that there is no evidence or factually insufficient evidence to support a finding on this theory. However, Terry did not pursue this theory at trial, nor does he on appeal. Thus, we do not address whether the CD's were P.O.D. accounts.

A bank officer testified that the CD's were joint accounts with rights of survivorship. However, the record contains no written agreement between Mrs. Broumley and the bank evidencing that the CD's were accounts with rights of survivorhip. A written agreement is required by section 439(a) of the Probate Code, and parol evidence is not admissible to prove a right of survivorship in an account governed by this statute. TEX. PROB. CODE ANN. § 439(a) (Vernon 2003); *A.G. Edwards & Sons, Inc. v. Beyer*, 235 S.W.3d 704, 708 (Tex. 2007); *Stauffer v. Henderson*, 801 S.W.2d 858, 865-66 (Tex. 1990).

Accordingly, there is no evidence in the record to support a finding that the CD's were joint accounts with rights of survivorship.

**Attorney's Fees**

Finally, Nipp argues that, because the court's findings and conclusions with regard to ownership of the funds are erroneous, the court likewise erred by failing to award her all of her attorney's fees.

Although Nipp's attorney testified[5] concerning reasonable and necessary attorney's fees, the court made no findings of fact or conclusions of law on the issues of whether Nipp was entitled to attorney's fees or the amount of reasonable and necessary attorney's fees incurred. Nipp did not object to the absence of such findings, even though she filed a request for findings of fact and conclusions of law and later filed a notice of past due findings of fact and conclusions of law. Because of the absence of any

---

[5] Terry complains that Nipp's attorney provided no sworn testimony. However, Terry waived the requirement that the witness be placed under oath by failing to object when the court permitted counsel to testify without first being placed under oath. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (per curiam); *Keith v. Keith*, 221 S.W.3d 156, 169-70 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

findings on the issue of attorney's fees, we will not render judgment in Nipp's favor for attorney's fees. *See Nelson v. Nelson*, 193 S.W.3d 624, 630 (Tex. App.—Eastland 2006, no pet.); *cf. Buckeye Retirement Co., LLC v. Bank of Am., N.A.*, 239 S.W.3d 394, 405-06 (Tex. App.—Dallas 2007, no pet.) (affirming denial of attorney's fees where bank did not object to lack of findings or request additional findings). Instead, we will remand for the court to reconsider whether to award attorney's fees.

## Conclusion

Mrs. Broumley retained beneficial ownership of the funds represented by the CD's until her death. There is no evidence to support a finding that she made a gift of these funds to Terry or that he obtained ownership of the funds under some other theory. Thus, the court erred by concluding that Terry owned these funds at the time of withdrawal.

Accordingly, we reverse the judgment of the trial court and render judgment in part declaring that the funds represented by the CD's were the property of Mrs. Broumley at the time of her death and are property of the estate. We further remand this cause to the trial court to reconsider whether to award attorney's fees to Nipp.

FELIPE REYNA
Justice

Before Chief Justice Gray,
  Justice Reyna, and
  Justice Davis
  (Chief Justice Gray concurring with note)*
Reversed and rendered in part,
  Reversed and remanded in part
Opinion delivered and filed April 1, 2009
[CV06]

*       (Chief Justice Gray concurs in the judgment to the extent that it determines the certificates of deposit were owned by Opal Broumley at the time they were cashed out by Terry Broumley and that as a result thereof the Estate of Opal Broumley has a claim against Terry Broumley for the amount thereof. Further, Chief Justice Gray concurs in the remand of this proceeding to the trial court for reconsideration by the trial court of the issue of attorney's fees. Other than as expressly stated in this note, Chief Justice Gray does not join the opinion or judgment. A separate opinion will not follow.)