**Opinion issued June 18, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————————

**NO. 01-11-00829-CV**

————————————————

**LEIGH GOMER, Appellant**

**V.**

**DONALD DAVIS, RUBY DAVIS, ALTHA/ANN STEINLAGE, Appellees**

On Appeal from the 189th District Court
Harris County, Texas
Trial Court Case No. 2011-01203

## DISSENTING AND CONCURRING OPINION

Leigh Gomer sued Donald and Ruby Davis and Ann Steinlage (collectively, "appellees"), for conversion of the purebred poodle Gomer contends she received as a gift from Jane Artall, Donald Davis's mother. In two issues, Gomer contends

that (1) the trial court erred in granting a directed verdict in favor of appellees because she presented legally sufficient evidence that she owned the dog and (2) the trial court erroneously imposed $5,000 in sanctions against Gomer and her attorney for bringing a frivolous suit. Although the majority vacates the imposition of sanctions, it affirms the directed verdict against Gomer. I join the majority in vacating the sanctions award, but would reverse the directed verdict and remand for a new trial because Gomer's evidence that Artall intended to gift the dog to her was legally sufficient.

## Background

Gomer and Artall, both dog breeders, had been friends since the mid-1980's and occasionally bred one another's dogs. Artall obtained *Ras Come Blow Your Horn of Marquise (aka Gabriel)*, a purebred miniature poodle, shortly after his birth in April 2007 from Patricia Redmond.

Gomer testified that Artall gave Gabriel to her on August 1, 2008 "[b]ecause [Artall] was afraid she was going to die soon and she wanted someone to care for [him]." According to Gomer, Artall chose Gomer "because [Gomer] took care of [Gabriel]." The testimony of the dog's original breeder/owner, Patricia Redmond, too, confirmed the gift of the dog from Artall to Gomer. In fact, Redmond further provided the reason why, as Artall herself explained it to Redmond, Gabriel the

2

poodle was given to Gomer rather than to Redmond: unlike Redmond, Gomer did not crate the dog.

Gomer testified that she had Gabriel in her possession from August 1, 2008, until mid-September 2008 and that she also "had him on numerous occasions after that." She returned Gabriel to Artall's possession in September 2008 because Artall "loved the animal and it was our agreement that she have him in her home. I would retain ownership and she would keep him."

For the next two years, until Artall's death on November 1, 2010, Gomer would keep Gabriel when Artall was in the hospital, and Artall had him when she was home convalescing. Gomer estimated that she had Gabriel for "about 10 percent of the time" during this period, and Artall kept him the remaining time. Gomer testified that she wanted Artall to keep Gabriel with her, unless Artall was unable to care for him or Gomer was breeding him.

During Artall's final visit to the hospital, however, Ann Steinlage took Gabriel to her apartment, and the day after Artall's death, Donald Davis picked the dog up from Steinlage and took him home with him and refused to give him to Gomer. When it became apparent the Davises were steadfast in their refusal to relinquish the dog, Gomer ultimately sued the Davises and Steinlage for conversion. Asked why she sued Steinlage, Gomer responded that Gabriel "was supposed to be with [Artall] and [Artall] only until she died" and that Steinlage

3

illegally took Gabriel from Artall's apartment without permission when Artall went into the hospital for the last time.

During the bench trial, the trial court admitted an American Kennel Club ("AKC") form executed by both Artall and Gomer dated August 1, 2008, purporting to transfer ownership of the dog from Artall to Gomer. Gomer mailed the original form to the AKC in November 2010. Gomer also acknowledged that, prior to Artall's death, she never claimed to any of the appellees that she was Gabriel's owner.[1] Gomer further acknowledged that she and Artall had a "falling out" in April 2010, but that Artall never attempted to rescind her gift.

In granting appellees' motion for a directed verdict, the trial court stated, "Judgment for the defendant. I want an application for attorney's fees for a frivolous case against counsel and against Ms. Gomer for bringing this case; and we'll deal with that when that is made." Appellees subsequently moved for sanctions pursuant to Texas Rule of Civil Procedure 13 and Civil Practice and Remedies Code Chapter 10, although which subsections of Civil Practice and Remedies Code section 10.001 that Gomer was to have violated were never identified.

---

[1] The majority misconstrues Gomer's testimony on this point. Gomer did not testify that she never made a claim of ownership to *anyone* prior to Artall's death; Gomer testified that she never made a claim of ownership to *any of the appellees*.

4

On July 11, 2011, the trial court signed a final judgment, which recited "[t]he Court FINDS that the motion for directed verdict is well taken, that the suit by Plaintiff is entirely frivolous and without merit, and that Defendants' motion should be GRANTED." The judgment also awarded appellees $5,000 in sanctions against Gomer and her counsel, jointly and severally. The trial court denied Gomer's motion for new trial and this appeal ensued.

## Directed Verdict

In her first issue, Gomer contends that the trial court erred in granting a directed verdict on her conversion claim because she presented legally sufficient evidence that she received Gabriel as a gift from Artall and thus had an ownership interest in the miniature poodle.

### A. Standard of Review

A trial court may direct a verdict when a plaintiff fails to present evidence raising a fact issue essential to its right of recovery or when the evidence conclusively proves a fact that establishes the movant's right to judgment as a matter of law. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Cox v. S. Garrett, L.L.C.*, 245 S.W.3d 574, 578 (Tex. App.—Houston [1st Dist.] 2007, no pet.). A directed verdict is appropriate when reasonable minds can draw only one conclusion from the evidence. *Smith v. Aqua-Flo, Inc.*, 23 S.W.3d 473, 476 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

5

In reviewing the granting of a directed verdict, we follow the standard of review for assessing the legal sufficiency of the evidence. *Cox*, 245 S.W.3d at 578 (citing *City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005)). We examine the evidence in the light most favorable to the party against whom the verdict was directed, and we determine whether there is any evidence of probative value to raise a material fact issue on the question presented. *Id.* We credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *See City of Keller*, 168 S.W.3d at 827.

### B. Evidence of Gift

A gift is a voluntary transfer of property to another made gratuitously and without consideration. *Lopez v. Lopez*, 271 S.W.3d 780, 788 (Tex. App.—Waco 2008, no pet.). To establish the existence of a valid inter vivos gift, the plaintiff must show (1) that the donor intended to make a gift; (2) delivery of the property; and (3) acceptance of the property by the donee. *Nipp v. Broumley*, 285 S.W.3d 552, 558 (Tex. App.—Waco 2009, no pet.); *Edwards v. Pena*, 38 S.W.3d 191, 197 (Tex. App.—Corpus Christi 2001, no pet.). The plaintiff establishes the requisite donative intent with, among other things, "evidence that the donor intended an *immediate and unconditional* divestiture of his or her ownership interests and an immediate and unconditional vesting of such interests in the donee." *Nipp*, 285 S.W.3d at 559 (emphasis in original); *Troxel v. Bishop*, 201 S.W.3d 290, 297 (Tex.

6

App.—Dallas 2006, no pet.) ("[T]o be a gift in praesenti [at the present time], the donor must, at the time he makes it, intend an immediate divestiture of the rights of ownership out of himself and a consequent immediate vesting of such rights in the donee.").

Until the donor has absolutely and irrevocably divested herself of the title, dominion, and control of the subject of the gift, she has the power to revoke the gift. *Edwards*, 38 S.W.3d at 197; *see also Troxel*, 201 S.W.3d at 296 ("All dominion and control over the property must be released by the owner."). The donee does not have ownership of the subject of the gift until complete ownership has been transferred from the donor to the donee. *Edwards*, 38 S.W.3d at 197. An inter vivos gift must be absolute and not open for future reconsideration. *Soto v. First Gibraltar Bank, FSB San Antonio*, 868 S.W.2d 400, 403 (Tex. App.—San Antonio 1993, writ ref'd); *see also Dorman v. Arnold*, 932 S.W.2d 225, 228 (Tex. App.—Texarkana 1996, no writ) (holding that, as matter of law, present donative intent not shown because donor intended for property to remain his until his death); *Woodworth v. Cortez*, 660 S.W.2d 561, 564 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.) ("A gift may generally not be made to take effect in the future since a mere promise to give is unenforceable without consideration.").

The evidence in this case, which consists of the testimony of Gomer and Redmond, and the exhibits admitted into evidence at the bench trial, can be

7

interpreted in one of two ways. One could look at the evidence and conclude that although Artall purportedly gave Gabriel to Gomer on August 1, 2008, as evidenced by the transfer of ownership form, she never intended to make an absolute and irrevocable gift at that time because the gift was contingent upon her keeping possession of Gabriel, so long as she was able to care for him, until her death.

Or, considering the evidence in the light most favorable to Gomer, as an appellate court must do under these circumstances, *Cox*, 245 S.W.3d at 578, one could reasonably conclude that Artall gave Gabriel to Gomer on August 1, 2008, as evidenced by the transfer of ownership form (intent) and that Gomer took immediate possession of the dog and kept him for a month and a half (delivery and acceptance). *Nipp*, 285 S.W.3d at 558 (setting forth requirements for inter vivos gifts). One could also reasonably conclude that Gomer, who had been friends with Artall for over twenty-five years, wanted Artall to keep the little dog that she loved with her for as long as she was able, so the two women agreed that Artall would keep Gabriel with her, except when she was in the hospital. There is no evidence that this agreement was a condition that the donor, Artall, placed on the gift. The fact that Gomer allowed Artall to keep Gabriel for extended periods does not diminish her rights as the owner.

Accordingly, I would hold that Gomer introduced some evidence of each of the elements necessary to establish the existence of a valid inter vivos gift. *See Nipp*, 285 S.W.3d at 559; *Troxel*, 201 S.W.3d at 297; *Edwards*, 38 S.W.3d at 197. I would therefore hold that the trial court erred in granting a directed verdict in favor of appellees in light of this evidence. *See Smith*, 23 S.W.3d at 476 ("If the Smiths introduced some evidence on each of the elements for design defect, the trial court erred in granting Aqua-Flo's motion for directed verdict.").

Accordingly, I would sustain Gomer's first issue.

### Sanctions

Although I agree with the majority's disposition of the sanctions award in this case, I write separately to note my concern over the trial court's apparent bias against Gomer. Indeed, that the court would, *sua sponte*, demand a party litigant to provide him with a motion for sanctions speaks volumes as to the trial judge's predisposition regarding this case ("I want an application for attorney's fees for a frivolous case against counsel and against Ms. Gomer for bringing this case. . . ."). The fact that appellees' attorney either would not, or could not, even articulate in his motion which subsections of Civil Practice and Remedies Code section 10.001 that he believed Gomer had violated also offers a disturbing "tell."

9

## Conclusion

Because Gomer presented legally sufficient evidence that Artall intended to make an absolute and irrevocable gift of Gabriel to her in August 2008, I would reverse the judgment of the trial court as it relates to the granting of appellees' motion for directed verdict and remand for a new trial.

Jim Sharp
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Justice Sharp, dissenting and concurring, in part.