Michael Massengale, Justice
This is an appeal from a divorce decree. Before trial, the trial court rendered partial summary judgment confirming that two businesses formed during the marriage were the wife's separate property. After a bench trial on the remaining issues, the court found that the husband had committed waste and fraud, and it divided the marital estate.
Appellant Eleazar Maldonado raises six issues on appeal. First he challenges the partial summary judgment, arguing that there are questions of fact regarding the characterization of the businesses. He also challenges the legal and factual sufficiency of the evidence to support the court's findings of fact regarding waste, fraud on the community estate, and the value of used copiers. And he challenges the division of the marital estate.
Because we conclude that the trial court erred by ruling that one of the businesses was the separate property of appellee Silvia Maldonado, we remand for further proceedings, including a reevaluation of the division of property. The legal and factual sufficiency issues regarding waste and fraud on the community are intertwined with Eleazar's challenge to the division of the property, which must be reevaluated by the trial court on remand, and therefore we need not address them now.
The divorce decree ordered Eleazar to pay Silvia $27,500 as a sanction for disposing of used copy machines in violation of an injunction that prohibited both spouses from "reducing the value of the property of one or both the parties." To the extent Eleazar purports to challenge this award, the issues are inadequately briefed.
Accordingly, we reverse the division of property, and we remand the case to the trial court for proceedings consistent with this opinion.
Background
Eleazar and Silvia Maldonado were married in 1988. At that time, Eleazar worked *410 as a wastewater operator, and Silvia worked for a document production company. Two years later, they formed Document Services of Texas, Inc. Silvia was named as the owner of all of the stock issued by the new company. DST provided litigation support, such as copying documents and retrieving medical records. Silvia worked at DST from its inception, and Eleazar began working for the company in the early or mid-1990s. From 2005 to 2013, Eleazar handled finances for DST, while Silvia focused on marketing, production, and quality control. In 2006, Eleazar and Silvia formed ESBEC, LLC, which purchased a building used as DST's place of business.
Throughout the marriage, DST was the Maldonados' primary source of income. Despite the long hours Silvia worked and the volume of DST's business, Eleazar repeatedly reported that they had no money because clients were not paying their bills. In 2011, Silvia began investigating their personal and business finances. After locating bank statements and business financial records, she discovered large sums of money had been withdrawn from their personal and business accounts and could not be reconciled with their expenses. Statements from one business checking account were missing, and other bank statements showed multiple and frequent transfers among the personal and business accounts. Silvia confronted Eleazar about the missing money, and he told her that she "would never find it," nor would she miss it because she had everything she needed.
Nevertheless, Silvia repeatedly questioned Eleazar about the missing money. After an argument at DST's office, Eleazar gave Silvia a signed and notarized letter regarding his interest in DST and ESBEC:
September 7, 2012
I Eleazar Maldonado Sr., I am writing this letter to give all my right in ownership to Silvia Maldonado. All properties and business are including below. Also, any savings or checking accounts that we might have together.
1) [redacted in clerk's record]
2) ESBEC
4201 Caroline
Houston, Texas 77004
3) Discovery Services of Texas, Inc.
4201 Caroline
Houston, Texas 77004
4) [redacted in clerk's record]
Sworn to and subscribe[d] before me on the 7 day of September 2012[.]
A year later, Silvia filed for divorce. Before trial, she filed a motion for partial summary judgment seeking a determination that DST, ESBEC, and other real and personal property were her separate property. She based her summary-judgment motion on Eleazar's 2012 letter, which she attached to the motion, along with an affidavit. In her affidavit, she averred:
5. We both signed this document during our marriage. [Eleazar] signed this agreement to memorialize the gift transfer of the property referred to therein because it was his desire to give me the remaining community assets after I had accused him of embezzling our community assets, which I discovered was true. I had expressed an interest to [Eleazar] in taking some time off from our business (Discovery Services of Texas, Inc.) because I had been working so long without a break. Upon hearing this, [Eleazar] conveyed to me that there was never enough money for the family, insinuating that I couldn't take a break because the family needed me to continue to work these long hours to make money to support them. Upon hearing this, I expressed to [Eleazar] that I *411 knew of no real reason why there was never any money, because I was aware of the amount of time I was putting into the business and the money the business was bringing in. The only explanation for having no money was that [Eleazar] must be embezzling the monies from both the company and our personal accounts. Upon being accused of embezzling funds, [Eleazar] became defensive and prepared and signed a document giving me all of our other community assets, and stated that if I thought he had embezzled all of this money, then he would give and gift me all of our remaining community assets. Respondent is the one who prepared the document, listed the assets, signed it and had it notarized before he gave it to me. I signed the document in 2014.
6. After the execution of this document, [Eleazar] gave it to me, and I accepted it and the property listed therein. I was at the time the 100% shareholder of Discovery Services of Texas, Inc. as evidenced in Exhibit A-2 attached hereto.
....
7. Both [Eleazar] and I signed the agreement voluntarily. I did not use force or trick to make [Eleazar] sign. Rather, he signed of his own free will.
Silvia made no specific mention of ESBEC in her affidavit.
Eleazar did not deny that he wrote, signed, and delivered this letter to Silvia. Instead, he argued that she had judicially admitted that the businesses were community property, that he was under duress when he wrote the letter, that his intention in writing the letter was to mollify his wife rather than to give her property, and that he never delivered any property to her.
In an affidavit supporting his response to the motion for partial summary judgment, Eleazar averred that when he wrote the letter, he was "under unspeakable emotional distress." He said that near the end of their marriage, Silvia became "distant" and "verbally combative," "screaming and cursing" at home and at work. According to Eleazar, Silvia accused him of adultery and embezzlement, embarrassed him in front of their employees, and threatened to divorce him. He said that he wrote the letter after a particularly contentious incident at the office, but he stated, "I did not sign the letter with the intent to give any of my interest in our property to Silvia. I signed the letter to calm Silvia down."
Eleazar also argued that he never relinquished access to any property mentioned in the letter, and he never signed any written conveyances of property. He averred: "no change in ownership was ever made to the entity ESBEC, which is owned by Silvia and me." He also attached two motions which, he contended, included judicial admissions in his favor on the question of whether he had gifted his community interest to Silvia. These motions were Silvia's motion for temporary orders and a motion to disqualify Eleazar's attorney.
In April 2016, the court granted the motion for partial summary judgment in part, confirming that DST and ESBEC were Silvia's separate property and denying the motion in all other respects. After a bench trial on the remaining issues, the trial court entered the divorce decree and filed findings of fact and conclusions of law.
As part of the final divorce decree, the trial court awarded Silvia $27,500 as a sanction for Eleazar's violation of a court-ordered injunction that prohibited the parties from "destroying, removing, concealing, encumbering, transferring or otherwise harming or reducing the value of the *412 property of one or both of the parties." While the divorce was pending, Eleazar took several copiers and recycled them for $400, the value of the usable scrap metal. Silvia testified at trial that they were necessary business equipment and that they had a replacement cost of $55,000.
Eleazar appealed.
Analysis
I. Appellate jurisdiction
We begin by addressing a challenge to our jurisdiction to entertain this appeal. Although not raised as a separate or independently briefed issue, Silvia suggested a jurisdictional defect in her appellate brief's summary of argument section, and her counsel emphasized the jurisdictional challenge at oral argument. These were not preferred ways to bring a jurisdictional issue to our attention.[1] Nevertheless, since we always have an obligation to confirm our own jurisdiction, and because Silvia's counsel raised the issue so emphatically at oral argument, we will first address our appellate jurisdiction.
In her brief, Silvia asserts that we "do not have jurisdiction to look behind" the trial court's findings of fact and conclusions of law because Eleazar "failed to challenge and specifically object to each finding" in his brief. She thus reasons that Eleazar waived his rights to challenge the partial summary judgment granted before trial and the sufficiency of the evidence supporting various findings affecting the division of the marital estate. At oral argument, Silvia's counsel referenced Awde v. Dabeit[2] as purported authority for our lack of jurisdiction.
Awde , as well as another opinion issued on the same day and upon which Awde primarily relied, IKB Industries (Nigeria) Ltd. v. Pro-Line Corp. ,[3] have no connection to Silvia's jurisdictional argument. The "sole question" in Awde was "whether a request for findings of fact and conclusions of law following a dismissal for want of jurisdiction and the imposition of sanctions extends the time for perfecting appeal under Rule 41(a)(1) of the Texas Rules of Appellate Procedure."[4] The "sole question" in IKB Industries was "whether requesting findings of fact and conclusions of law following dismissal of a case as a sanction for discovery abuse extends the time for perfecting appeal under Rule 41(a)(1) of the Texas Rules of Appellate Procedure."[5]
There is no issue about the timeliness of Eleazar's appeal. Awde and IKB Industries , both of which addressed the timeliness of notices of appeal for purposes of Rule 41(a)(1), are therefore inapplicable. To the extent Silvia raises questions about waiver of particular issues due to Eleazar's failure to challenge the trial court's findings of fact, those contentions do not implicate our appellate jurisdiction.
II. Characterization of businesses as separate property as result of a gift
Eleazar challenges the trial court's grant of partial summary judgment in which it ruled that DST and ESBEC were Silvia's separate property. In her traditional motion for summary judgment, Silvia *413 argued that Eleazar gifted her his interest in certain community property, including the couple's ownership of DST and ESBEC, thus making it her separate property. On appeal, as in the trial court, Eleazar argues that there are disputed questions of fact on the elements that a person must prove to establish the transfer of property by gift.
A. Effect of fact findings following partial summary judgment
Silvia argues that Eleazar waived his challenge to the trial court's pretrial partial-summary-judgment determination that she established the separate character of DST and ESBEC as a matter of law. She contends that to pursue this issue on appeal Eleazar was required to object to the trial court's post-trial findings of fact which support the legal conclusion that he gifted his community-property interest in DST and ESBEC to her, transforming them into her separate property.
Not so. While a partial summary judgment is an interlocutory ruling that is subject to revision while the trial court retains its plenary power,[6] the court nevertheless cannot determine prior to trial that certain issues have been established as a matter of law, conduct the trial on that basis, and then withdraw its ruling without allowing the parties a fair opportunity to present their positions on issues no longer taken to be established.[7]
That happened in this case. Eleazar moved for reconsideration of the partial summary judgment on the gift issue immediately before trial began, and the trial court denied that motion. Then during trial, Silvia's counsel objected to evidence relating to dividing the value of ESBEC on the basis that it already had been confirmed as Silvia's separate property. The trial court sustained the objection.
We conclude that the trial court decided the characterization of DST and ESBEC as Silvia's separate property as a matter of law based on the evidence presented in the motion for partial summary judgment. Under the particular circumstances of this case, in which Eleazar was not permitted a fair opportunity to litigate the fact issues underlying the pretrial determination that he had gifted his interest in DST and ESBEC, thus making it Silvia's separate property as a matter of law, the trial court could not transform its pretrial ruling as a matter of law into a post-trial ruling based on a resolution of disputed facts.[8] Eleazar has properly challenged the trial court's *414 ruling as a matter of law that DST and ESBEC were the separate property of Silvia.
B. Effectiveness of interspousal gift
Silvia moved for traditional summary judgment seeking a judicial determination that, among other property, DST and ESBEC were her separate property. On a motion for summary judgment, she had to prove that there was no genuine issue of material fact and she was entitled to judgment as a matter of law.[9] If the movant's summary-judgment motion and evidence establish her right to judgment as a matter of law, then the burden shifts to the nonmovant to defeat the summary-judgment motion by raising an issue of fact on one element of the movant's claim.[10]
We review a traditional summary judgment de novo,[11] taking "as true all evidence favorable to the nonmovant," indulging "every reasonable inference," and resolving "any doubts in the nonmovant's favor."[12] As part of our de novo review of a summary judgment, like the trial court we consider only the evidence "on file at the time of the hearing, or filed thereafter and before judgment with permission of the court" before the trial court when it ruled on the summary-judgment motion.[13]
Silvia argued that DST and ESBEC became her separate property when Eleazar gifted to her his community-property interest in them. "Property possessed by either spouse during or on dissolution of marriage is presumed to be community property," unless its characterization as separate property is proved by "clear and convincing evidence."[14] One spouse may make a gift of property to the other,[15] and property acquired by a married person by gift during the marriage is that person's separate property.[16] Whether property is separate or community in nature is a mixed question of law and fact.[17]
"A gift is a voluntary transfer of property to another made gratuitously and without consideration."[18] To establish the existence of a gift, the party must prove:
*415 (1) intent to make a gift; (2) delivery of the property; and (3) acceptance of the property.[19] The burden of proving that property was acquired by gift is on the recipient.[20]
Thus to prove that Eleazar gifted his community-property interest in DST and ESBEC to her, Silvia was required to demonstrate that he intended to make a gift, he delivered the gift, and she accepted it. If she satisfied this burden, Eleazar could defeat summary judgment only by showing that there was a genuine issue of material fact on some element of Silvia's claim. On appeal, Eleazar contends that there were questions of fact as to the elements of his intent to make a gift and delivery of a gift.
A. DST, Inc.
Silvia provided the following summary-judgment evidence to support her claim that DST was her separate property: her affidavit; Eleazar's 2012 letter; DST's articles of incorporation; a letter from the Texas Secretary of State which indicated that DST had been created; DST's by-laws; and a copy of a DST stock certificate issued in her name.
In her affidavit, Silvia averred that she was married to Eleazar when he gave her the 2012 letter. At the time she accepted the letter, Silvia was the sole, 100% shareholder of DST. She was also the sole director of DST. The letter from Eleazar stated that it was written "to give all my right in ownership" to Silvia. The letter listed four properties and businesses, which included DST, Inc. The letter was signed, notarized, and delivered to Silvia.
1. Alleged judicial admissions
Eleazar asserts that certain papers filed by Silvia during the divorce proceedings constitute a judicial admission that DST was community property. He bases this on two statements from two motions she filed. Her motion for temporary orders referenced the "temporary use and possession" of the parties' community property, "including but not limited to, the ... business." The motion to disqualify Eleazar's attorney alleged that she had "surreptitiously viewed and taken information from the parties' community owned business without the express consent of ... the *416 president and 100% shareholder of the company."
For a statement to be a judicial admission, it must be "clear, deliberate, and unequivocal."[21] The statements that Eleazar identified were not deliberate, clear, and unequivocal admissions that DST was community property and not the separate property of Silvia. The statement in the motion for temporary orders referred generally to the "business," without identifying any particular business entity. In addition, at the same time the motions were filed, Silvia had a pleading on file that sought a declaration that DST was her separate property. Similarly, the statement in the motion to disqualify was not clear and unequivocal because it referenced only Silvia's sole ownership of an unspecified "business." We therefore reject Eleazar's suggestion that at the same time Silvia was litigating the issue of whether DST was her separate property, isolated statements taken out of tangential filings were judicial admissions against her own litigation position.
2. Duress
Eleazar contends that his summary-judgment evidence created questions of fact as to his donative intent. In his affidavit, he averred that he wrote the 2012 letter to pacify Silvia and that he did not intend to give her his interest in any community property. He maintains that he raised a defense of duress, which shifted the burden to Silvia to prove that the alleged gifts were fair and equitable.
Duress is "the result of threats which render persons incapable of exercising their free agency and which destroy the power to withhold consent."[22] To prove duress, "the compulsion must be actual and imminent, and not merely feigned or imagined."[23] A party establishes duress by showing (1) a threat or action was taken without legal justification; (2) the threat or action was of such a character as to destroy the other party's free agency; (3) the threat or action overcame the opposing party's free will and caused it to do that which it would not otherwise have done and was not legally bound to do; (4) the restraint was imminent; and (5) the opposing party had no present means of protection.[24] Whether factual allegations amount to duress is a question of law for the court.[25]
Eleazar claims that he was "overwhelmed with duress" because Silvia yelled at him within earshot of their employees, and that he was "under unspeakable emotional distress" due to her anger and threat of divorce. Assuming the truth of Eleazar's affidavit, we nevertheless conclude that it did not raise a fact question about duress because his descriptions of marital discord do not show that Silvia threatened unlawful action or rendered *417 him incapable of exercising his free will.[26] Furthermore, since the factual allegations in his affidavit do not support a claim of duress, his statements that he "was under unspeakable emotional duress" and that he was "overwhelmed with duress" were conclusory and insufficient to raise a question of fact on the legal concept of duress that he asserts on appeal.[27]
3. Delivery
Eleazar argues that there was no delivery of his interest in DST because he did not execute any instruments of conveyance. But his sole interest in DST was his community-property interest in shares of stock that already were held in Silvia's name.
Silvia's summary-judgment evidence established that while they were married, Eleazar wrote the letter, he gave it to her, she accepted it, and it stated his then-present intention to give her all his ownership rights in DST. Her evidence also showed that she was the custodian of DST's documents, which included a DST stock certificate identifying her as the owner of all issued shares of the company. Under these circumstances, in which the stock already was issued to Silvia and controlled by her as custodian of DST's documents, there was no physical delivery or legal formality necessary to transfer the stock to her to indicate that she assumed ownership of it.[28] Eleazar's letter therefore was sufficient to transfer his intangible community-property interest in stock ownership to Silvia.[29]
4. Relinquishment of control
Finally, Eleazar argues that there was no gift because he continued to work at DST as he had before, and therefore he did not divest himself of "control and dominion" over the company. Relying on Edwards v. Pena , he contends that "[u]ntil a donor has divested [himself], absolutely and irrevocably of the title, dominion, and control of the subject of the gift, [he] has the power to revoke it."[30]
In Edwards , an elderly woman added the name of her personal secretary to a certificate of deposit while retaining her own ownership interest.[31] Although the actual *418 certificate of deposit was given to the personal secretary, the Corpus Christi court of appeals explained that the "physical certificate is simply a record of the debt owed by the bank."[32] The court reasoned that the CD was intangible personal property in which the elderly woman retained an ownership interest, which permitted her to "exchange the document for cash at any time."[33] Thus the court of appeals held that the elderly woman had not made a completed gift.[34]
Comparing his circumstance to Edwards , Eleazar argues that because his name remained on DST bank accounts, his letter purporting to give his interest in the company to Silvia was subject to revocation. In particular, he relies on his summary-judgment affidavit's assertions that:
Additionally, after signing the letter, neither I nor Silvia sought to remove my name from any of the bank accounts held jointly by Silvia and myself or from any bank accounts in the name of our family business, DST.
....
Moreover, none of our bank accounts were ever changed by me to exclude me from use and access.
Prior to signing the letter to Silvia, Eleazar had a community-property interest in DST, but he did not personally own any of DST's assets, including its bank accounts.[35] Eleazar's access to bank accounts in his capacity as an employee or agent of DST was not inconsistent with Silvia's ownership of the shares of DST as her separate property. Thus, this case differs from Edwards , in which the purported donor of a gift retained an ownership interest in a disputed certificate of deposit. Eleazar's summary-judgment affidavit did not raise a question of fact regarding whether he had relinquished control of the shares of DST for purposes of determining their character as Silvia's separate property.
* * *
Accordingly, because Silvia proved that Eleazar gifted to her his interest in DST, and because Eleazar failed to raise a question of fact on any element of a gift, we conclude that the trial court did not err by confirming that DST was Silvia's separate property.
B. ESBEC, LLC
The evidence regarding the characterization of ESBEC differed materially from the evidence of DST's characterization. To support her claim that ESBEC was her separate property, Silvia provided only Eleazar's 2012 letter. Silvia's affidavit made no specific reference to ESBEC. Silvia provided no evidence of what ESBEC is or does, what type of business organization it is, the nature of her ownership interest, or who else may have any interest in it. Aside from the 2012 letter, the only other mention of ESBEC appears in Eleazar's summary-judgment affidavit, in which he averred: "no change in ownership was ever made to the entity ESBEC, which is owned by Silvia and me."
Unlike the evidence regarding DST, Silvia's summary-judgment evidence did not indicate what formalities may or may not have been necessary to effectuate a change in ownership of their community-property ownership of ESBEC.
*419 The evidence is inconclusive about the characterization of ESBEC. We conclude that Silvia did not prove as a matter of law that Eleazar delivered his interest in ESBEC to her so as to transform it into her separate property.[36] The court erred by confirming ESBEC as her separate property, and we therefore sustain Eleazar's first issue in part.
* * *
When the mischaracterization of property affects the trial court's just-and-right division of the marital estate, we must remand the entire community estate to the trial court for a just-and-right division of the properly characterized community property.[37] We have concluded that Silvia did not conclusively prove that ESBEC was her separate property to justify a ruling in her favor as a matter of law. On remand, Silvia may offer additional evidence to substantiate her claimed characterization of this asset.
Eleazar has challenged the legal and factual sufficiency of the evidence to support the court's findings of fact regarding waste and fraud on the community estate. In addition, he has challenged the court's division of the estate as being disproportionate. Sufficiency of the evidence is not an independent ground for reversible error in a divorce appeal.[38] But because we are remanding to the trial court for a just-and-right division of the properly characterized community estate, we do not need to address Eleazar's second, third, and fourth issues, which contend that the division of the estate was disproportionate.
III. Award for violation of injunction
After the parties filed for divorce, the trial court entered agreed mutual temporary injunctions. Among other things, the injunctions prohibited both parties from "[d]estroying, removing, concealing, encumbering, transferring, or otherwise harming or reducing the value of the property of one or both of the parties." The trial court found that Eleazar violated the temporary injunction and awarded Silvia $27,500 as a result of the violation.
Eleazar challenges the legal and factual sufficiency of the court's finding of fact that the fair market value of the copiers he recycled during the divorce litigation was $55,000. In his brief he asserts, without argument or reference to legal authority, that the judgment awarding $27,500 should therefore be reversed.
To the extent that Eleazar contends that the judgment of $27,500 for violation of the temporary injunction must be reversed, his issues are inadequately briefed.[39] Eleazar characterizes the judgment as an award for conversion, but Silvia had no claim for conversion of the copiers, and the final divorce decree made no reference to conversion. Instead the final divorce decree explicitly awarded $27,500 "as a result of the court ordered injunctions" prohibiting Eleazar from transferring the copiers, and he presents no legal argument addressing the validity of the award as a consequence of his violation of the injunction.
Conclusion
We reverse the portion of the trial court's decree pertaining to property division, *420 and we remand to the trial court for further proceedings.

See Tex. R. App. P. 38.1(h) ("The brief must contain a succinct, clear, and accurate statement of the arguments made in the body of the brief. ") (emphasis supplied); Tex. R. App. P. 39.2 ("Oral argument should emphasize and clarify the written arguments in the briefs. ") (emphasis supplied).

938 S.W.2d 31 (Tex. 1997) (per curiam).

938 S.W.2d 440 (Tex. 1997).

938 S.W.2d at 32 (emphasis supplied).

938 S.W.2d at 441 (emphasis supplied).

See Fruehauf Corp. v. Carrillo , 848 S.W.2d 83, 84 (Tex. 1993) (per curiam).

Elder Constr., Inc. v. City of Colleyville , 839 S.W.2d 91, 92 (Tex. 1992) (per curiam); see also Bi-Ed, Ltd. v. Ramsey , 935 S.W.2d 122, 123-24 (Tex. 1996) (per curiam). In an earlier and simpler formulation, this court previously adhered to a rule that "[o]nce an interlocutory summary judgment is entered, the issues decided cannot be further litigated unless the judgment is set aside by the trial court, or unless the summary judgment is reversed on appeal." City of Hous. v. Socony Mobil Oil Co. , 421 S.W.2d 427, 430 (Tex. Civ. App.-Houston [1st Dist.] 1967, writ ref'd n.r.e.). This statement of rule did not adequately accommodate the trial court's inherent authority to change, modify, or set aside an interlocutory partial summary judgment at any time before the expiration of its plenary power. See Fruehauf , 848 S.W.2d at 84. Thus, as implicitly acknowledged by Fabio v. Ertel , 226 S.W.3d 557, 561-62 (Tex. App.-Houston [1st Dist.] 2007, no pet.), the Supreme Court's more nuanced analysis in Elder Construction and Bi-Ed has superseded formulations of the rule as stated in this court's older opinions, Socony Mobil Oil , 421 S.W.2d at 427, and Cunningham v. Eastham , 465 S.W.2d 189, 192 (Tex. Civ. App.-Houston [1st Dist.] 1971, writ ref'd n.r.e.).

See Bi-Ed , 935 S.W.2d at 123-24 ; Elder Constr. , 839 S.W.2d at 92 ; Fabio , 226 S.W.3d at 561-62.

Tex. R. Civ. P. 166a(c) ; Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding , 289 S.W.3d 844, 848 (Tex. 2009).

Lujan v. Navistar, Inc. , No. 16-0588, 555 S.W.3d 79, 84-85, 2018 WL 1974473, at *3 (Tex. Apr. 27, 2018).

Cantey Hanger, LLP v. Byrd , 467 S.W.3d 477, 481 (Tex. 2015).

Valence Operating Co. v. Dorsett , 164 S.W.3d 656, 661 (Tex. 2005).

Tex. R. Civ. P. 166a(c).

Tex. Fam. Code § 3.003.

See Hilley v. Hilley , 161 Tex. 569, 342 S.W.2d 565, 568 (1961) ("a gift by the husband to the wife of his interest in community property would become the separate property of the donee"); Pankhurst v. Weitinger & Tucker , 850 S.W.2d 726, 730 (Tex. App.-Corpus Christi 1993, writ denied) ("a gift by a husband to his wife of a portion of his interest in community property becomes the wife's separate property"); see also Tex. Fam. Code § 3.005 ("If one spouse makes a gift of property to the other spouse, the gift is presumed to include all the income and property that may arise from that property.").

Tex. Const. art. XVI, § 15 ("All property, both real and personal, of a spouse owned or claimed before marriage, and that acquired afterward by gift, devise or descent, shall be the separate property of that spouse...."); Tex. Fam. Code § 3.001(2) ("A spouse's separate property consists of ... the property acquired by the spouse during marriage by gift....").

See Raymond v. Raymond , 190 S.W.3d 77, 80 (Tex. App.-Houston [1st Dist.] 2005, no pet.) (citing McElwee v. McElwee , 911 S.W.2d 182, 188 (Tex. App.-Houston [1st Dist.] 1995, writ denied) ).

Gomer v. Davis , 419 S.W.3d 470, 476 (Tex. App.-Houston [1st Dist.] 2013, no pet.).

Id. ; see also Wells v. Sansing , 151 Tex. 36, 39, 245 S.W.2d 964, 965 (1952) ("to constitute a gift inter vivos there must be a delivery of possession of the subject matter of the gift by the donor to the donee, and a purpose on the part of the donor to vest in the donee, unconditionally and immediately, the ownership of the property delivered"); Restatement (Third) of Property § 6.1 (2003) ("(a) To make a gift of property, the donor must transfer an ownership interest to the donee without consideration and with donative intent. (b) Acceptance by the donee is required for a gift to become complete. Acceptance is presumed, subject to the donee's right to refuse or disclaim.").

See Gomer , 419 S.W.3d at 476 ; Rusk v. Rusk , 5 S.W.3d 299, 303 (Tex. App.-Houston [14th Dist.] 1999, pet. denied). A number of cases have indicated that the transfer of property from one spouse to the other creates a rebuttable presumption of a gift. See, e.g. , Clark v. Clark , No. 13-15-00222-CV, 2017 WL 1483307, at *2 (Tex. App.-Corpus Christi Apr. 20, 2017, pet. denied) (mem. op.) (presumption that interspousal conveyance is a gift can be rebutted); Pearson v. Pearson , No. 03-13-00802-CV, 2016 WL 240683, at *5 (Tex. App.-Austin Jan. 15, 2016, no pet.) (mem. op.) ("Interspousal transfers are presumed to be a gift and, thus, the separate property of the recipient spouse."); Roberts v. Roberts , 999 S.W.2d 424, 432 (Tex. App.-El Paso 1999, no pet.) (citing Story v. Marshall , 24 Tex. 305 (1859) ); In re Marriage of Morrison , 913 S.W.2d 689, 693 (Tex. App.-Texarkana 1995, writ denied) ; see also Cockerham v. Cockerham , 527 S.W.2d 162, 168 (Tex. 1975) (when husband uses separate property to buy land and takes title in wife's name, there is a presumption that he intended to make a gift to her).

Regency Advantage Ltd. P'ship v. Bingo Idea-Watauga, Inc. , 936 S.W.2d 275, 278 (Tex. 1996) ; Bowen v. Robinson , 227 S.W.3d 86, 94 (Tex. App.-Houston [1st Dist.] 2006, pet. denied).

Sudan v. Sudan , 199 S.W.3d 291, 292 (Tex. 2006) (quoting Dall. Cty. Cmty. Coll. Dist. v. Bolton , 185 S.W.3d 868, 877 (Tex. 2005) ).

Sudan , 199 S.W.3d at 292 (quoting Dall. Cty. Cmty. Coll. Dist. , 185 S.W.3d at 879 ).

Wang v. Gonzalez , No. 01-11-00434-CV, 2013 WL 174576, at *9 (Tex. App.-Houston [1st Dist.] Jan. 17, 2013, no pet.) (mem. op.); Kalyanaram v. Burck , 225 S.W.3d 291, 301 (Tex. App.-El Paso 2006, no pet.) ; McMahan v. Greenwood , 108 S.W.3d 467, 482 (Tex. App.-Houston [14th Dist.] 2003, pet. denied).

Wang , 2013 WL 174576, at *9 (citing Wright v. Sydow , 173 S.W.3d 534, 544 (Tex. App.-Houston [14th Dist.] 2004, pet. denied) ).

See Sudan , 199 S.W.3d at 292 ; Wang , 2013 WL 174576, at *9.

See Concierge Nursing Ctrs., Inc. v. Antex Roofing, Inc. , 433 S.W.3d 37, 50 (Tex. App.-Houston [1st Dist.] 2013, pet. denied) (conclusory statements are incompetent summary-judgment evidence).

Cf. Restatement (Third) of Property § 6.1 cmt. c (2003) ("In order to make an effective transfer of an ownership interest, the donor must own the property being transferred, have an intent to make the transfer, and satisfy any applicable formalities for making a transfer."); id. § 6.2 cmt. h ("A donor may make a gift of intangible personal property by delivering the instrument evidencing the claim that constitutes the intangible personal property. Such instruments include bonds, shares of stock, insurance policies, and bank passbooks.").

See O'Donnell v. Halladay , 152 S.W.2d 847, 850-51 (Tex. Civ. App.-El Paso 1941, writ ref'd w.o.m.) ("In order that there be an effective gift, either causa mortis or inter vivos, there must be a delivery to or for the benefit of the donee. By 'delivery' in this sense is meant a surrender of the possession of the property, or the symbol of the property, to the donee, with the intention and purpose of then vesting title in the donee." (internal citation omitted) ); see also Restatement (Third) of Property § 6.2 (2003) ("The transfer of personal property, necessary to perfect a gift, may be made (1) by delivering the property to the donee or (2) by inter vivos donative document.").

38 S.W.3d 191, 197 (Tex. App.-Corpus Christi 2001, no pet.).

Id. at 194, 197.

Id. at 197.

Id.

Id.

See El T. Mexican Rests., Inc. v. Bacon , 921 S.W.2d 247, 251 (Tex. App.-Houston [1st Dist.] 1995, writ denied) (corporation, not shareholder, owned the business's assets).

See Restatement (Third) of Property § 6.1 cmt. c (2003); id. § 6.2 cmt. h.

McElwee , 911 S.W.2d at 189.

See Puntarelli v. Peterson , 405 S.W.3d 131, 136 (Tex. App.-Houston [1st Dist.] 2013, no pet.).

See Tex. R. App. P. 38.1(i).