

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00369-CV

### IN RE VIZZA WASH, L.P. D/B/A CAR WASH EXPRESS

Original Mandamus Proceeding[1]

Opinion by:     Rebeca C. Martinez, Chief Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Beth Watkins, Justice (concurring in the order only)
                Liza A. Rodriguez, Justice

Delivered and Filed: August 28, 2024

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

Vizza Wash, L.P. d/b/a/ Car Wash Express, the relator, seeks a writ of mandamus to compel the trial court to vacate its denial of Vizza Wash's written requests to compel a medical examination of David Koerber, the real party in interest, under Texas Rule of Civil Procedure 204 and to direct the trial court to sign an order granting a medical examination. In two issues, Vizza Wash contends that: (1) the trial court clearly abused its discretion in denying its motion to compel a medical examination under Rule 204; and (2) it lacks an adequate remedy by appeal. We conditionally grant mandamus relief.

---

[1] This proceeding arises out of Cause No. 2021-CI-16518, styled *David Koerber v. Colter Rushing, et al.*, pending in the 288th Judicial District Court, Bexar County, Texas, the Honorable Cynthia Marie Chapa presiding.

## I. BACKGROUND

On December 7, 2020, Koerber operated a motor vehicle that was exiting an O'Reilly Auto Parts store in San Antonio, Texas, when his vehicle collided with a motor vehicle operated by Colter Rushing, an O'Reilly employee. Rushing, according to the police report, told the investigating police officer that "he was exiting the private driveway and his view of the roadway was blocked by a large truck." The police report notes that "[Rushing's vehicle] pulled out into the street in front of [Koerber's vehicle]," and Koerber's vehicle hit Rushing's vehicle.

Koerber filed a negligence claim against Rushing and O'Reilly to recover monetary damages for, among other things, a back injury that he alleges he sustained during the collision. Michael A. Leonard, M.D., a neurosurgeon, recommended a laminectomy and spinal fusion surgical procedure to treat Koerber's lumbar disc herniation and spine pain. Dr. Leonard estimated that the recommended surgical procedure would cost a total of $425,000. In defending against Koerber's claim, Rushing and O'Reilly retained Daniel Gutierrez, D.O., who provided a report. As discovery progressed, O'Reilly designated Vizza Wash as a responsible third party, and Koerber amended his petition to assert a negligence claim against Vizza Wash. After appearing in the lawsuit, Vizza Wash cross-designated Dr. Gutierrez as an expert.

Vizza Wash later filed a timely motion to compel medical examination. Vizza Wash's motion argued that all of the requirements under Rule 204.1(c) had been satisfied, referenced, among other opinions, the Texas Supreme Court opinion in *In re H.E.B. Grocery Co., L.P.*, 492 S.W.3d 300 (Tex. 2016) (per curiam), specified the scope of a proposed medical examination, and requested that the trial court compel Koerber to submit to such an examination by an unspecified physician. Koerber filed no written response. Instead, at the hearing, Koerber argued:

> Good cause, Judge, is not — it's not just a mere formality, but it has to be expressly limited. In other words, mere conclusory allegations on the pleadings or by mere relevance to the case requires still an affirmative showing by the movant. In this

case, Judge, as you've noticed, they have not yet produced any evidence by any physician that they would be compromised or require the IME.

. . .

They designated both the same expert. Here's the report by Dr. Gutierrez that was formulated in May of 2022. He reviewed the records. He did a chronology. He established his opinions. And, again, he's already formulated his opinions, Judge.

And so — and nowhere in his report does it say, I require that the exam be necessary — that I examine Mr. Koerber so that I can formulate an opinion. On the contrary, he already came to a conclusion.

. . .

On the contrary, what Dr. Gutierrez should have done is said, ["]Hey, I need to examine him.["] He needs to identify the place, the time, the manner, the conditions and the scope of the examination. They did not do so in this case. They don't have any evidence showing — to satisfy the requirements of subsection (d) in Rule 204.

Remember, counsel began this argument by saying this is based on Rule 204. These are the conditions, these are the requirements that you have to satisfy. And they did not do so, Judge.

So no affidavit means the Court is in no position to order the manner of the exam, the condition of the exam, the scope of the exam, the time, place or the person examining my client, Mr. Koerber.

The trial court denied Vizza Wash's motion to compel a medical examination.

On October 17, 2023, Vizza Wash filed a motion to reconsider. Vizza Wash's motion to reconsider argued that Koerber's responsive arguments had been rejected by the Texas Supreme Court in *In re Sherwin-Williams Co.*, 668 S.W.3d 368 (Tex. 2023) (per curiam). Vizza Wash attached an affidavit signed by Joel Jenne, M.D., an orthopedic surgeon, which provides:

I am a board-certified orthopedic surgeon who specializes in spine surgery. I have been in private medical practice in San Antonio since 2014.

I have been asked by the Law Offices of Lawrence & Martinez to evaluate medical causation and damages issues implicated by the allegations of the Plaintiff David Koerber.

As part of my evaluation, I have requested permission to conduct a physical examination of Mr. Koerber. I would conduct an orthopedic spine examination of

the plaintiff David Koerber that includes a history of how his neck and back hurt, how they hurt, location of pain, duration and symptoms, frequency, intensity, prior medical history to his neck and back, treatment he has received and what alleviates or worsens said conditions.  I would perform a non-invasive medical exam of his spine including musculoskeletal and neurological exam to include the following:

|     |     |
| --- | --- |
| a. | Inspect and palpate spine and extremities; |
| b. | Range of motion tests/examination of neck, back and extremities; |
| c. | Spurling's maneuver, Lhermitte's test, straight leg testing, gait, etc.; |
| d. | Vascular examination/Palpation of peripheral pulses; |
| e. | Motor testing; |
| f. | Sensory testing; |
| g. | Reflex testing[;] |
| h. | Axial loading[;] |
| 1. | Tests for nerve root impingement[; and] |
| j. | Strength testing |

The nature of the examination and tests that I would perform on David Koerber are no different than those I would perform on any patient who presents to me for treatment.  The nature of the examination and tests that I would perform are similar to those performed by Plaintiff's treating physicians[.]  I would perform similar tests to those completed by Dr. Michael Leonard's examination of the plaintiff.

The goal of this independent medical examination is not to prove or disprove a legal issue, rather, it is an opportunity to meet and assess Mr. Koerber in the same manner afforded to his treating physicians and to discover factual information regarding his current medical condition.

More specifically, the purpose of the examination is to help me assess the extent to which Plaintiff's alleged injuries were caused or exacerbated by the motor vehicle accident on December 7, 2020.  The examination will also help me assess Plaintiff[']s current condition and what future care and treatment would be necessitated by the December 7, 2020 accident, as well as what limitations Mr. Koerber may have on his ability to work.

As demonstrated by the records of Dr. Leonard, it is routine for orthopedic spine surgeons to conduct this type of spine examination whenever seeing a patient because orthopedic spine surgeons are taught, where possible, to make their own observations of things such as muscle strength, range of motion, tenderness to palpation, reflexes, and nerve impingement [] because the tests are subjective to both the provider and the patient and first-hand observation helps determine the validity of the results.  They also help me determine the validity of the result, particularly whether or not the patient shows genuine effort or presents evidence of malingering.

I need to examine David Koerber to assess the extent by which his injuries, if any, were caused or exacerbated by the accident made the basis of this lawsuit, his

current condition and what future care and treatment would be necessitated by the accident made the basis of this lawsuit, if any, as well as what limitations he may have on his ability to work, if any.

The medical exam I want to perform on Davi[d] Koerber is the least intrusive means for me to opine fully on the cause of Mr. Koerber's pain complaints and his current ability to work based on the conditions of his spine, including any limitations the current condition of his spine may have on Mr. Koerber's ability to work.

Thus, the ability to conduct the examination myself provides me with information that is not available from solely a review of the medical records or the transcript from a deposition of the treating physicians.

As with Vizza Wash's initial motion, Koerber again filed no written response. Instead, Koerber orally argued that Dr. Jenne "has been retained at a minimum 77 times in the last four years" by parties defending against personal injury claims, he "writes reports with the same exact conclusion [that the alleged injury is an age-appropriate degenerative condition] without doing a DME" [sic], and therefore, his professed need for a medical examination "lacks credibility."

The trial court denied Vizza Wash's motion for reconsideration. Vizza Wash seeks mandamus relief from the trial court's denials of its request for a medical examination under Rule 204.

## II. DISCUSSION

### A.    Standard of Review

"Mandamus is an extraordinary remedy granted only when the relator shows that the trial court abused its discretion and that no adequate appellate remedy exists." *H.E.B. Groc.*, 492 S.W.3d at 302. A trial court abuses its discretion when its ruling amounts to a clear and prejudicial error of law, or if the trial court fails to correctly analyze or apply the law to the facts. *Id*. at 302–03. "The relator must establish that the trial court could have reasonably reached only one conclusion." *Id*. at 303.

**B.      Texas Rule of Civil Procedure 204**

The trial court may order a party to submit to a physical or mental examination by a qualified physician or to a mental examination by a qualified psychologist "only for good cause" when the physical or mental condition of a party is in controversy or the party responding to the motion has designated a psychologist as a testifying expert. *See* TEX. R. CIV. P. 204.1(c). "The purpose of Rule 204.1's good-cause requirement is to balance the movant's right to a fair trial and the other party's right to privacy." *H.E.B. Groc.*, 492 S.W.3d at 303. To show good cause, the movant must: (1) show that the requested examination is relevant to issues in controversy and will produce or likely lead to relevant evidence; (2) establish a reasonable nexus between the requested examination and the condition in controversy; and (3) demonstrate that the desired information cannot be obtained by less intrusive means. *Id*.

**C.      Good Cause**

**1.      *Relevance***

The first good-cause prong is relevance. "When the existence, extent, and cause of an injury are in controversy, an exam intended to glean information regarding those issues will satisfy the relevance requirement." *In re Auburn Creek Ltd. P'ship*, 655 S.W.3d 837, 841–42 (Tex. 2022) (per curiam). Dr. Jenne testified by affidavit:

> More specifically, the purpose of the examination is to help me assess the extent to which Plaintiff's alleged injuries were caused or exacerbated by the motor vehicle accident on December 7, 2020. The examination will also help me assess Plaintiff[']s current condition and what future care and treatment would be necessitated by the December 7, 2020 accident, as well as what limitations Mr. Koerber may have on his ability to work.

Vizza Wash satisfies the relevance prong with these statements by Dr. Jenne. *Id*. at 842 ("Dr. Martinez proposed a battery of tests to evaluate the Paus' claims of brain injuries due to carbon-

monoxide exposure, including the existence, cause, nature, extent, and proper treatment of any injuries.").

Regarding all three prongs, Keorber argues that "Dr. Jenne has routinely provided expert opinions in the past based solely on his review of the medical records and no examination of the patient: why is this case different?" As support, Koerber references several reports purportedly signed by Dr. Jenne. Even if the reports Koerber references support his assertion and such an assertion could be considered in this original proceeding,[1] the Texas Supreme Court rejected Koerber's argument over eight years ago. *See H.E.B. Groc.*, 492 S.W.3d at 303 ("[Plaintiff] argues that [the defendant's retained expert] was able to formulate an opinion without requesting or conducting an examination, but we fail to see how this undermines the examination's relevance or otherwise extinguishes any right [the defendant] may have to such an examination.").

### 2.    *Reasonable Nexus*

In *H.E.B. Grocery*, the Texas Supreme Court noted that:

> [T]he purpose of the examination is to determine the existence, nature, and extent of the injuries [Plaintiff] sustained on [Defendant's] property. The condition in controversy is [Plaintiff's] physical health — his past, present, and future injuries related to the fall and other causes, and the extent of his damages. The requested examination thus directly relates to the condition in controversy and satisfies the nexus requirement.

*Id*. Dr. Jenne testified by affidavit that "[t]he nature of the examination and tests that I would perform are similar to those performed by Plaintiff's treating physicians[.] I would perform similar

---

[1] Keorber provides docketing information for reports allegedly signed by Dr. Jenne in five federal cases and one state case. The reports Koerber references are not in the mandamus record, and Koerber has not filed a supplemental mandamus record, *see* TEX. R. APP. P. 52.7(b), wherein he certifies or swears that the reports were filed in the underlying proceeding. Accordingly, we may not consider the reports Koerber references. *See Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 556 n.9 (Tex. 1990) (orig. proceeding) ("Because this evidence and these rule changes were not before the trial court, they do not form a basis for us to find that the trial court abused its discretion in this mandamus proceeding."); *Sabine Offshore Serv., Inc. v. City of Port Arthur*, 595 S.W.2d 840, 841 (Tex. 1979) (per curiam) (orig. proceeding) ("The Court of Civil Appeals should not have based its judgment upon evidence contained in affidavits not a part of the trial court record.").

tests to those completed by Dr. Michael Leonard's examination of the plaintiff." Dr. Leonard recommended a surgical procedure that costs a total of $425,000, and Koerber seeks to recover this amount as part of his compensatory damage award. Therefore, Vizza Wash satisfies the reasonable nexus prong with these statements by Dr. Jenne. *Id*.

### 3. *Less Intrusive Means*

Vizza Wash argues that Dr. Jenne's affidavit testimony comports with the statements found to satisfy the less-intrusive-means prong in *Sherwin-Williams*. As relevant to the less-intrusive-means prong, Dr. Jenne testified:

- More specifically, the purpose of the examination is to help me assess the extent to which Plaintiff's alleged injuries were caused or exacerbated by the motor vehicle accident on December 7, 2020.

- The examination will also help me assess Plaintiff[']s current condition and what future care and treatment would be necessitated by the December 7, 2020 accident, as well as what limitations Mr. Koerber may have on his ability to work.

- As demonstrated by the records of Dr. Leonard, it is routine for orthopedic spine surgeons to conduct this type of spine examination whenever seeing a patient because orthopedic spine surgeons are taught, where possible, to make their own observations of things such as muscle strength, range of motion, tenderness to palpation, reflexes, and nerve impingement.

- [B]ecause the tests are subjective to both the provider and the patient and first-hand observation helps determine the validity of the results.

- They also help me determine the validity of the result, particularly whether or not the patient shows genuine effort or presents evidence of malingering.

- Thus, the ability to conduct the examination myself provides me with information that is not available from solely a review of the medical records or the transcript from a deposition of the treating physicians.

These statements by Dr. Jenne comport with those recognized to satisfy the less intrusive means prong in *Sherwin-Williams*, 668 S.W.3d at 371–72.

Koerber responds with three arguments. First, Koerber argues that *H.E.B. Grocery* is distinguishable because "[t]he subsequent accident introduced new complications with respect to the nature, extent, and cause of the plaintiff's injuries that warranted a physical examination" and that "Koerber has not been involved in any subsequent accidents since the preparation of Dr. Gutierrez's report." In *H.E.B. Grocery*, the Texas Supreme Court wrote:

> Finally, HEB has shown that the desired information cannot be obtained by less intrusive means. Although Dr. Swan has reviewed Rodriguez's medical records, he explained in his deposition why a treating doctor is in a better position to examine and treat a patient's injuries than a records review doctor. Significantly, Rodriguez intends to prove causation and damages through expert testimony, and Rodriguez's expert has already examined him. HEB merely seeks to allow its competing expert the same opportunity, and the results of Dr. Swan's requested examination go to the heart of HEB's defense strategy. Further, requiring Dr. Swan to testify at trial without the benefit of examining Rodriguez places him at a distinct disadvantage because it allows Rodriguez to call into question his credibility in front of the jury. *Finally, we agree with HEB that the Sam's Club incident, which occurred after Dr. Swan prepared his initial report, introduced new complications with respect to the nature, extent, and cause of Rodriguez's injuries that warrant a physical examination.* We hold that the requested single physical examination is required to obtain a fair trial and therefore necessitates intrusion upon the privacy of the person HEB seeks to have examined. Accordingly, HEB has established good cause for the examination.

*H.E.B. Groc.*, 492 S.W.3d at 303–04 (emphasis added; citations, brackets, and quotation marks omitted). In *Sherwin-Williams*, the Texas Supreme Court noted:

> [Plaintiff] attempts to distinguish *H.E.B.* by asserting that the plaintiff in that case had suffered a subsequent injury after the defendant's expert had completed his report. Although we did identify a subsequent injury as a relevant factor, we did not conclude it was necessary for an exam to be ordered.

668 S.W.3d at 371 n.1. Accordingly, the personal-injury claimant's subsequent accident was a *relevant* factor, but it was not a *necessary* factor. *See id.*; *H.E.B. Groc.*, 492 S.W.3d at 303–04.

Next, Koerber argues that "[t]his case is also distinguishable from *Sherwin Williams*" in two respects. First, Koerber argues that "[Dr.] Jenne has not presented any evidence or argument that he has ever been subjected to a motion to strike because he did not examine the plaintiff."

While the Texas Supreme Court instructed a trial court to reconsider granting a motion to strike that was premised, at least in part, on the trial court's denial of a Rule 204 medical examination, there is no indication that such a circumstance is a prerequisite to satisfying any of the good cause elements. *See Auburn Creek*, 655 S.W.3d at 843 ("Because the erroneous denial of an examination affected the trial court's ruling on the motion to strike, that ruling should be reconsidered."). Second, Koerber argues that "[t]he trial court correctly saw this gambit for what it is, Dr. Jenne is a career professional medical defense expert who has always been able to come to the 'right' conclusions using only medical records and his experience." Keorber provides no authority for his proposition that the trial court's determination of Dr. Jenne's credibility insulates it from the holdings in *H.E.B. Grocery*, *Auburn Creek*, and *Sherwin Williams*. Instead, the trial court may not condone the "distinct disadvantage" of "requiring [a defendant's retained expert] to testify at trial without the benefit of examining [the plaintiff]." *H.E.B. Groc.*, 492 S.W.3d at 304.

Finally, Koerber contends that Vizza Wash failed to satisfy the less-intrusive-means prong as we defined it in *In re Gonzalez*, No. 04–15–00553–CV, 2015 WL 5837896 (Tex. App.—San Antonio Oct. 7, 2015, orig. proceeding) (mem. op.). In *Gonzalez*, we held:

> [The defendant's retained expert] does not, however, detail any information necessary to his evaluation or development of opinions that is not covered by existing examinations or medical records, or that could not be obtained by other discovery, such as deposing additional witnesses. The [defendant] did not establish that the information regarding [the plaintiff's] condition which would be available to their experts through other forms of discovery is inadequate for the purpose of defending against [the plaintiff's] claims and obtaining a fair trial.

*Id.* at *2 (internal citation omitted).

Our opinion in *Gonzalez* was issued before the Texas Supreme Court handed down its opinions in *H.E.B. Grocery*, *Auburn Creek*, and *Sherwin Williams*. As a result, *Gonzalez* did not address the "distinct disadvantage" consideration that was later articulated in *H.E.B. Grocery* and applied in *Auburn Creek* and *Sherwin Williams*. *See Sherwin-Williams*, 668 S.W.3d at 372;

- 10 -

*Auburn Creek*, 655 S.W.3d at 843; *H.E.B. Groc.*, 492 S.W.3d at 304. The relator's retained expert in *Sherwin-Williams* "explained in his affidavit that he needed to examine [the plaintiff] to assess 'the extent to which [his] injuries were caused or exacerbated by' the accident, his 'current condition and what future care and treatment would be necessitated by' the accident, 'as well as what limitations [he] may have on his ability to work.'" *Sherwin-Williams Co.*, 668 S.W.3d at 371. The expert in *Sherwin Williams* also "pointed out that 'these tests are subjective,' so an examination is necessary 'to determine the validity of the result, particularly whether or not the patient shows genuine effort or presents evidence of malingering.'" *Id.* at 372. Koerber concedes that Dr. Jenne's affidavit "mirrors" that of the expert in *Sherwin Williams*, and, as we have quoted it above, both contain similar statements. However, Koerber fails to explain how our holding in *Gonzalez* was impacted by *H.E.B. Grocery*, *Auburn Creek*, and *Sherwin Williams*.

That trio of cases have implicitly superseded our holding in *Gonzalez*, now bind us to weigh the "distinct disadvantage" consideration, and dictate that requiring Dr. Jenne to testify at trial without the benefit of examining Koerber would place him at a distinct disadvantage by allowing Koerber to call into question his credibility in front of the jury. *See In re Sherwin-Williams*, 668 S.W.3d at 372 ("[R]equiring Dr. Jorgensen to testify at trial without the benefit of examining Acosta would place him at a distinct disadvantage by allowing Acosta to call into question his credibility in front of the jury."); *In re Auburn Creek*, 655 S.W.3d at 843 ("[A]bsent an exam, Auburn Creek would lose the battle of the experts."); *In re H.E.B. Groc.*, 492 S.W.3d at 304 ("[R]equiring Dr. Swan to testify at trial without the benefit of examining Rodriguez places him at a distinct disadvantage because it allows Rodriguez to call into question his credibility in front of the jury."); *see also Maldonado v. Maldonado*, 556 S.W.3d 407, 413 n.7 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("[T]he [Texas] Supreme Court's more nuanced analysis in [two Texas

Supreme Court opinions] has superseded formulations of the rule as stated in this court's older opinions[.]").

We sustain Vizza Wash's first issue.

**D.      Adequate Remedy by Appeal**

In Vizza Wash's second issue, it argues that it lacks an adequate remedy by appeal to address the trial court's erroneous denial of its motion to compel a medical examination of Koerber.  The Texas Supreme Court has repeatedly held that appeal is an inadequate remedy to address errors regarding Rule 204 examinations that impair the movant's ability to develop expert testimony fully and fairly and thus severely compromises the ability to present a defense in the case.  *See In re Sherwin-Williams*, 668 S.W.3d at 372; *In re Auburn Creek*, 655 S.W.3d at 843; *In re H.E.B. Groc.*, 492 S.W.3d at 304.  As in *H.E.B. Grocery*, Vizza Wash's defense in this case challenges the nature, extent, and cause of Koerber's injuries, and these issues depend significantly on expert testimony.  *See In re H.E.B. Groc.*, 492 S.W.3d at 304–05. Vizza Wash seeks to allow Dr. Jenne the same opportunity that Dr. Leonard had to fully develop and present his opinions, thereby ensuring fundamental fairness and a fair trial.  *See id.*  Therefore, we conclude that Vizza Wash lacks an adequate remedy by appeal.

We sustain Vizza Wash's second issue.

### III. CONCLUSION

Having examined and fully considered Vizza Wash's petition for writ of mandamus, Koerber's response, Vizza Wash's reply, the mandamus record, and the applicable law, we are of the opinion that Vizza Wash has met its burden to obtain mandamus relief as stated herein.  We conditionally grant Vizza Wash's petition for writ of mandamus.  We direct the trial court to vacate its order denying Vizza Wash's motion for reconsideration and sign an order granting Vizza Wash's motion to compel a medical examination of Koerber.  We are confident that the trial court

will promptly act in accordance with this memorandum opinion. Accordingly, the writ of mandamus will issue only if the trial court fails to comply with this memorandum opinion within fifteen calendar days of its issuance.

Rebeca C. Martinez, Chief Justice